## JACOB RICE *vs.* MANUEL T. FORSYTH, JR., use of ABBARILLA FORSYTH.

*Contract of Sale—Absence of implied Warranty, other than that of Title, by the Vendor—Performance of Contract—Recoupment.*

By a written contract dated the 12th of August, 1873, F. agreed to sell and R. to purchase "one steam engine, one boiler, one piece of line shafting and three pulleys on same, three hangers, and one wood-splitting machine, all complete, and all to be left in good order for the sum of $600 cash." In a suit by F. against R. to recover a balance due on the contract, and for additional articles furnished, the plaintiff offered the contract in evidence, and proved that he furnished the articles therein mentioned all complete and in good order, prior to the 19th of September, 1873. He also testified that he was the owner of the business carried on at his shop on Biddle street, at the time the contract was made. The defendant then offered to prove that before the contract was made, he informed the plaintiff of the purpose for which the machinery therein mentioned was wanted, namely, for sawing and splitting wood, but that he did not tell the plaintiff the amount of sawing and splitting he wished or expected the engine he proposed to purchase, to do. He also testified that the engine and machinery did in fact saw and split wood, though not as well as he expected it should; that it would saw the wood and then split it, but would not run the saw and splitter at the same time. He also admitted that the engine was a second

hand article; and further testified that he knew nothing of machinery and the plaintiff was a practical machinist and had been for eight years, and that he relied entirely on the skill and judgment of the plaintiff in purchasing said machinery; that the plaintiff told him the engine then in his shop together with a boiler and wood-splitting machine not then in his shop, but which he would furnish, would answer the purpose; and that he thereupon entered into the contract in question; that upon trial the machinery "was found to be totally unfit for said purpose of sawing and splitting wood in the quantity that he desired it should as before mentioned;" that he notified the plaintiff "of the same," and the plaintiff himself admitted "the same;" and to meet the wishes of the defendant he proposed to remove the engine first put up and erect a new, larger and better one if defendant would advance him $200 part of the original contract price of $600, to which the defendant assented, and in pursuance thereof the written agreement of the 19th of September, 1873, was made, whereby the plaintiff agreed to build for the defendant a new steam engine, seven to eight horse power or more, and to take back his old one. This contract was in no wise to supersede or abrogate the contract of the 12th of August. The defendant further testified that after the second engine was erected, the first boiler was found to be utterly unfit for it, and he was obliged to expend $400 to get a boiler to do his work, and suitable for said purpose, and that "the insufficiency of said machinery to do what the defendant expected of it, could not be discovered by him on inspection, but only on trial." HELD:

1st. That the facts of the case were not such as to give rise to any implied warranty, other than that of title, by the vendor, as to the articles mentioned in the written contract; and parol evidence was not admissible to add a warranty to the contract.

2nd. That performance of the contract of the 12th of August, 1873, consisted in the delivery of the *specific articles* therein mentioned, complete and in good order; and if the vendor thus performed his part of the contract, he was entitled to recover so much of the contract price as remained unpaid.

3rd. That if the vendor did not perform his part of the contract, the purchaser was entitled to have deducted from the *contract* price remaining unpaid, such damages, as the jury might find he had sustained by such non-performance.

APPEAL from the Superior Court of Baltimore City.

This action was brought by the appellee to recover from the appellant a balance due on a contract entered into by them on the 12th of August, 1873, and for additional

articles furnished by the former to the latter, as shown by an account filed with the declaration. The contract is set out in the opinion of the Court. The declaration contained the common counts and a count on the contract. To the common counts the defendant pleaded that he was never indebted as alleged, and to the special count: 1st. That he did not agree as alleged. 2nd. That the plaintiff had not complied with the several conditions in the agreement on his part to be performed and done, in that he had not completed and left in good order, suitable for the purposes for which they were to have been furnished and built by him, the steam-engine and boiler, and wood-splitting machine and appliances thereto, which he agreed and promised to do. 3rd. That the plaintiff at the commencement of the suit, was and still remained indebted to the defendant in the annexed open account, for work done and materials provided by the defendant for the plaintiff, at his request amounting to the sum of $68.40, which amount the defendant was willing to set-off against the plaintiff's claim, if any he had against him. With these pleas was filed a bill of particulars of the set-off. Issues were joined. The facts of the case are sufficiently stated in the opinion of the Court.

*Exception.*—The defendant offered the following prayers:

1. That if from the evidence, the jury believe that previous to contracting for the steam-engine and boiler, and wood-splitting machine and appliances thereto, for the price of which this suit is brought, the defendant informed the plaintiff of the particular purpose for which they were intended to be used, and the plaintiff, a machinist, represented to the defendant that a certain engine of about six horse power, then in plaintiff's shop, with the necessary boiler and other appliances, was suitable and sufficient for the purpose; and that the defendant, relying upon the skill and judgment of the plaintiff, contracted to buy said engine and boiler and wood-splitting machine and other

necessary appliances for running the same, from the plaintiff, the same to be all complete and left in good order for the sum of $600 ; that plaintiff thereupon erected said engine and boiler and wood-splitting machine ; that said engine and boiler were found upon trial, to be not suitable or sufficient for the said purpose, that plaintiff then proposed and contracted to exchange said engine for a larger one, in consideration of the payment of $200, part of the said $600, in advance, by the said defendant ; that this second contract was not otherwise to conflict with or affect the said first contract ; that plaintiff did remove the first engine and erect a larger one of about eight-horse power instead ; that the boiler first put up was not adapted to, and was too small for running the engine secondly erected to do the defendant's work ; that defendant notified plaintiff that said boiler was too small and was unfit for said purpose, that plaintiff refused to replace the same with a larger one, fit for said purpose, without an extra compensation over the price stipulated for in said first contract ; and that plaintiff did not, in fact, after being notified, erect a boiler suitable and fit to run the said larger engine required to do the defendant's work ; that plaintiff was not in any way prevented from so doing by the defendant ; and that said first contract has never been abandoned by consent of the plaintiff and defendant and has not been rescinded by the defendant ; then the plaintiff has not performed his contract and their verdict must be for the defendant.

2. That if the jury find the defendant before any purchase was made, informed the plaintiff that he wanted machinery for carrying on the wood-sawing and splitting business, and that the plaintiff, a machinist, agreed to furnish the same, as shown by the contract of Aug. 12, 1873, offered in evidence, then under that contract plaintiff was bound to furnish the defendant with the machinery therein mentioned, and the usual and necessary appliances to com-

Rice *vs.* Forsyth.

plete the same, and to put the same in good running order; all to be reasonably fit for the ordinary purposes of said business; and shall further find that the defendant was unskilled in machinery, and relied entirely on the plaintiff's judgment in making the purchase of said machinery; and that any defects therein, could not be discovered on inspection, but only on trial, and that upon trial, the machinery furnished by plaintiff under said contract, was found unfit for the ordinary purpose of said business; that the defendant notified the plaintiff of the same, and requested him to complete said contract, and that the plaintiff refused so to do, without additional compensation over the contract price; and that the plaintiff has not, in point of fact, performed said contract, then he cannot recover.

3. That if the jury shall find that the defendant did not agree to furnish labor and material for the erection of the machinery contracted for, but that the understanding between the parties was, that the machinery was to be put up by the plaintiff at his own expense, then the jury are to deduct as a set-off, the value of any labor and materials which the defendant so furnished at the request of the plaintiff, even if they find the plaintiff completed his contract of August 12, 1873, according to the true intent and meaning thereof, as defined in the defendant's second prayer, but if the jury shall find that the plaintiff has not completed said contract so defined, then the jury are also to deduct from the contract price, any damages they shall find the defendant has sustained, by reason of such non-fulfilment of said contract by the plaintiff; and if they shall find that such set-off and damages so found, together with the sum of $482.60, which the plaintiff admits to have received, equal or exceed the benefit which the defendant has actually received under said contract, then the plaintiff cannot recover.

4. That if the jury shall be satisfied from the evidence that the whole work stipulated for in the written contract of August 12, 1873, offered in evidence, was not completed by the plaintiff, then the plaintiff is not entitled to recover.

5. That if the jury find the governor, steam-whistle and belting mentioned in evidence, were not contracted for as extras by the defendant, but were to be furnished under the contract of August 12, 1873, in order to complete said contract, then the plaintiff is entitled to no extra compensation therefor.

These prayers, the Court (DOBBIN, J.) rejected, and gave the following instruction to the jury:

If the jury shall find from the evidence, that the plaintiff and defendant bargained orally for the purchase by the defendant of the articles mentioned in the agreement dated August 12, 1873, and that said bargaining was reduced to writing in the said agreement signed by the said parties respectively, then the said agreement constituted the contract between the parties, and the jury are to exclude from their consideration all the evidence given, subject to exception, of conversations prior to and resulting in the making of said written agreements; and if they shall find that the plaintiff has performed his part of said contract, by the delivery of the articles therein mentioned, complete and in good order, then the plaintiff is entitled to recover such part of the contract price for the same as they may find still remains unpaid.

But if they shall find that the plaintiff did not perform his part of the contract, then the defendant is entitled to have deducted from the contract price, remaining unpaid, such damage as they may find the defendant has sustained by such non-performance. And as to the brick foundation for the said engine, the cost of which the defendant claims to set-off against the claim of the plaintiff, if they shall find that it was agreed between the parties that the plaintiff was to pay for the same, and the plaintiff has not so

paid, then they shall allow the defendant for the cost of the same, in reduction of the sum they may find to be due to the plaintiff.

And as to the other articles sued for by the plaintiff, if the jury shall find that they were sold and delivered by the plaintiff to the defendant, at the request of the latter, at the prices charged for the same, or that the said prices were reasonable, then they must find for the plaintiff such contract price or such reasonable price.

To the giving of this instruction, and to the rejection of his prayers, the defendant excepted. The verdict and judgment being for the plaintiff, the defendant appealed.

The cause was submitted on briefs to BARTOL, C. J., STEWART, MILLER and ALVEY, J.

*W. Burns Trundle,* for the appellant.

The evidence of what occurred between the parties with reference to the subject-matter of the contract, aside from the agreement in writing of August 12th, 1873, was clearly admissible. It should not have been excluded. The general rule, that parol evidence is not admissible to vary a written contract, is not infringed by its admission. It is a corollary of that rule, as well settled as the rule itself, that parol evidence is always admissible to ascertain the parties and subject-matter of an agreement, to apply the contract to the subject-matter, to prove any collateral independent fact about which the written contract is silent, and to show the general intention of the parties, where the instrument is not decisive. *McCreary vs. McCreary,* 5 *Gill & J.,* 147, 156—158; *Creamer vs. Stephenson,* 15 *Md.,* 221; *Parks vs. Parks, et al.,* 19 *Md.,* 330; *Criss, et al. vs. Withers' Ex'r,* 26 *Md.,* 569; *Bladen vs. Wells and Wife,* 30 *Md.,* 583; *Stockham, Gar. vs. Stockham,* 32 *Md.,* 207; *Warfield vs. Booth,* 33 *Md.,* 69; *Basshor vs. Forbes,* 36 *Md.,* 166.

Here was a contract to furnish the defendant with a steam engine, a boiler, a wood-splitting machine, &c. This language is vague and indeterminate. Without the aid of parol proof it could not certainly be known what kind of a steam engine or boiler, or other machinery was meant. To apply the contract to its subject-matter, to show what was really contracted for, the defendant offered to prove who the parties were, what the machinery was wanted for; that he told the plaintiff the purpose to which it was to be applied, and relied on his skill and judgment to furnish suitable machinery. How else can the contract be made to speak the intent of the parties contracting? This evidence does not in anywise contradict the written agreement, the terms of which are general and indefinite, but is proof of additional or suppletory facts, without which the jury could not know what machinery was really intended.

Evidence is admissible to prove such a state of facts as give rise to an implied warranty, notwithstanding there is a written agreement. *Shepherd vs. Pybus,* 4 *Scott N. R.,* 434, 444, 449; *Sutton vs. Temple,* 12 *M. & W.,* 52, 55; *Wright vs. Crookes,* 1 *Scott N. R.,* 685.

The facts that the plaintiff was a practical machinist; that the defendant knew nothing of machinery; that the plaintiff was informed before the machinery was purchased, of the purpose for which it was wanted, and that the defendant relied entirely on the skill and judgment of the plaintiff, are sufficient to constitute an implied warranty, under the rule laid down by Ch. J. TINDAL, in *Brown vs. Edgington,* 2 *Scott's N. R.,* 496, 504. See *Bigge vs. Parkinson,* 7 *Hurls. & N.,* 954; *Jones vs. Bright,* 5 *Bing.,* 533; *Chitty on Contracts,* (6th ed.,) 399, (11 ed., 631–2.)

The whole subject of implied warranties is most clearly and ably summed up in the recent case of *Jones vs. Just,* 3

*Q. B.* 197, (*L. Rep.*) and the case at bar falls under the fourth category, page 202.

The case of *Hoe, et al. vs. Sanborn*, 21 *N. Y.*, 553, is a leading American authority on the subject.

In this present case the plaintiff told the defendant that the engine, then in his shop, together with a boiler and wood-splitting machine not there, but to be furnished, would answer the defendant's purpose. This affirmation itself by the vendor, constitutes an express warranty, under the rule as stated in *Osgood vs. Lewis*, 2 *H. & G.*, 495, affirmed in *Hyatt vs. Boyle*, 5 *G. & J.*, 110. In either aspect of the case, how can the plaintiff claim to have performed his contract by furnishing the defendant with machinery wholly unfit for the purpose for which he knew it was intended?

The jury were instructed by the Court, that if they found the plaintiff did *not* perform his part of the written contract, then the defendant was entitled to have deducted from the *contract price*, remaining unpaid, such damages as they may find the defendant has sustained by such nonperformance. The law is otherwise. By this instruction, the plaintiff is to recover, even if he did *not* perform his part of the contract at all. An unexecuted contract voluntarily abandoned, cannot constitute the foundation of an action. *Coates & Glenn vs. Sangston, Garn. of Cunningham*, 5 *Md.*, 128, 133, and the authorities there cited. *Watchman & Bratt vs. Crooke, et al.*, 5 *G. & J.*, 239, 254; *Sinclair vs. Bowles*, 17 *E. C. L. R.*, 340; 1 *Peters*, 465; *Denmead vs. Coburn*, 15 *Md.*, 29, 42, 45; *Conner & Gatch vs. Mt. Vernon Co.*, 25 *Md.*, 71.

By the defendant's third prayer, the Court was asked to instruct the jury, that if they found the set-off therein referred to, and such damages as they should find the defendant had sustained, together with the payments made, equalled or exceeded, not the contract price, but the benefit which the defendant had actually received, then

the plaintiff could not recover. None of the authorities carry the doctrine further than this in a case of non-performance of contract.

If the plaintiff could have recovered at all, without proving performance, it must have been on a *quantum valebat*—what under all the circumstances, his machinery was worth.

In *Denmead vs. Coburn*, 15 *Md.*, 44, it is said the plaintiff could not recover in "*indebitatus assumpsit*," unless the contract was fully performed, or abandoned by consent of parties, or by some act of the party, sought to be charged, the fulfilment of the contract was prevented. Hence the defendant's fourth prayer, which is identical with the defendant's second prayer in *Denmead vs. Coburn*, ought to have been granted.

The defendant's first prayer presents the whole case fairly to the jury, and ought to have been granted. The very fact of the plaintiff's proposing, September 19th, to take down the first engine, and erect a suitable one, is a concession on his part that he had not *then* performed his first contract. The very language of that paper is, "I hereby promise to fulfil this contract in every respect, and to have the engine ready as soon as possible, *after* I fulfil the first contract," showing that the first contract was *not* then completed.

The contract of September 19th, was properly admissible in evidence, as bearing upon the question of performance, and hence proper, to be referred to in the defendant's first prayer. The defendant never got from the plaintiff what he contracted for, namely: machinery suitable for the wood-sawing and splitting business, and it was only by an additional outlay of $400, that he was able to carry on the business at all. The defendant's second prayer correctly stated the law of the case. It required the jury to find the facts necessary to give rise to an implied warranty of fitness as defined in *Brown vs. Edgington.*

*Winfield J. Taylor*, for the appellee.

Was the Court below correct in its ruling out what occurred between the appellant and appellee, prior and subsequent to the written contract of August 12th, 1873?

The law rejects testimony of colloquium between parties prior to and contemporaneous with a subsequent written contract, between the same parties touching the same subject-matter.  Or in other words, " that when the parties have deliberately put in writing their engagement, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking was reduced to writing ; and that all oral testimony of a previous *colloquium* between the parties, or of conversation, or declarations at the time when it was completed, or afterwards, as it would tend in many instances, to substitute a new and different contract for the one which was really agreed upon, to the prejudice, possibly, of one of the parties, is rejected." 1 *Gr. Ev., sec.* 275, *and notes; Wesley vs. Thomas*, 6 *H. & J.*. 24 ; *Watkins vs. Stockett*, 6 *H. & J.*, 435 ; *Mitchell vs. Mitchell*, 6 *Md.*, 224 ; *Chitty's Contracts, marg. pages* 400, 401, and cases there cited.

This is clearly so if the proof is intended to show an *express* warranty between the parties, that machinery to be furnished should be reasonably fit and *sufficient;* for the written contract is simply " to have the machinery all complete, and all in good order." This is the only warranty. *Reed vs. Wood*, 9 *Vermont*, 285 ; *Munford vs. McPherson*, 1 *Johns.*, 414 ; *Lamb vs. Crafts*, 12 *Metcalf*, 353–5 ; *Dean vs. Mason*, 4 *Conn.*, 432 ; *Randall vs. Rhodes*, 1 *Curtis, C. C.*, 90 ; *Niles vs. Culver*, 8 *Barbour, S. Ct. Reports*, 205 ; *Dickinson vs. Zizinia*, 10 *C. B.*, 602 ; *Wright vs. Crookes*, 1 *Scott N. R.*, 685 ; *Jones vs. Bright*, 5 *Bing.*, 533 ; *Peltier vs. Collins*, 3 *Wendell*, 459.

As to what occurred between the parties subsequent to the contract of August 12th, 1873 : The Court below acted correctly in not allowing this testimony to be admitted.

1st. This evidence is not admissible under the pleadings in this case. *Yingling vs. Kohlhass,* 18 *Md.,* 148.

2nd. This evidence is collateral, independent and irrelevant to the case before us. *Turner vs. Madox,* 3 *Gill,* 190 ; *Marshall vs. Haney,* 9 *Gill,* 258 ; *Lee, et al., Garn. of Wolf vs. Tinges,* 7 *Md.,* 215.

3d. If this testimony proves anything it is this, that there was an agreement to *exchange* engines. Now, unless there is some *express* warranty of *suitableness* in this case, for non-suitableness is made the breach, there is no *implied* warranty of such. *La Neuville vs. Nourse,* 3 *Camp.,* 351.

. The appellant's first prayer is based throughout on an hypothesis not warranted by the facts in the case. It is also based on testimony which the Court below by a previous ruling had excluded from the attention of the jury. *B. & O. R. R. vs. Resley,* 14 *Md.,* 424; *Cumberland Coal & Iron Co. vs. Tilghman,* 13 *Md.,* 74; *Pettigrew vs. Barnum,* 11 *Md.,* 434 ; *Morrison vs. Welty,* 18 *Md.,* 169. Either of which grounds would justify the Court below in having refused this prayer. *Gray vs. Crook,* 12 *G. & J.,* 236.

Again, from its long and involved statement, it is calculated to mislead and embarrass the jury, and so was properly rejected. *Casey's Lessee vs. Inloes,* 1 *Gill,* 503 ; *Clements vs. Smith,* 9 *Gill,* 160 ; *B. & O. R. R. vs. Resley,* 14 *Md.,* 442 ; *Wilson vs. Smith,* 10 *Md.,* 67 ; *Evans' Practice,* 370, and cases cited.

. It also assumes many facts which ought to be found by the jury ; and instead of leaving these facts to the jury, it falls into the further error of submitting questions of law to them, especially as to what really was *the* contract of the parties. Also, whether or not, or how far the second

written contract was to conflict with the first. *B. & Susq. R. R. Co. vs. Woodruff*, 4 *Md.*, 252 ; *Elliott vs. Peterson's Exrs.*, 4 *Md.*, 476 ; *Gaither vs. Martin*, 3 *Md.*, 162 ; *B. & O. R. R. vs. Resley,* 7 *Md.*, 297 ; *Osceola Tribe, &c. vs. Rost,* 15 *Md.*, 295 ; *Whiteford vs. Monroe,* 17 *Md.*, 135.

But the correct law of the case is set forth in the Court's own instruction. The Court below had the undoubted right to give this instruction, which does the appellant full and substantial justice. *Keener vs. Harrod & Brooke,* 2 *Md.*, 74 ; *Coates & Glenn vs. Sangston,* 5 *Md.*, 121 ; *Snively & Keys vs. Fahnestock,* 18 *Md.*, 391 ; *Keech vs. B. & W. R. R.*, 17 *Md.*, 32.

MILLER, J., delivered the opinion of the Court.

The only exception in this record is to the rejection of the appellant's five prayers and to the Court's own instruction given to the jury. The parties entered into written contracts on the 12th of August, 1873, by which the plaintiff agreed to sell and the defendant to purchase " one steam-engine, one boiler, one piece of line shafting and three pulleys on same, three hangers, and one wood-splitting machine, all complete and all to be left in good order for the sum of $600, cash." The declaration contains a count on this contract, and the common counts for goods bargained and sold, and for work done and materials provided.

The plaintiff offered the contract in evidence, and proved that he furnished the articles therein mentioned all complete and in good order prior to the 19th of September, 1873. It was understood by both parties that the engine mentioned was a second-hand article. Parol testimony was then offered by the defendant, which was taken subject to exception, of certain conversations between the parties prior and subsequent to the written agreement. The Court afterwards by the first branch of its instruction, excluded from the consideration of the jury the conversa-

26                         v. 41.

tions prior to and resulting in the making of this written contract, and whether there was error in this is the main ground of controversy in the case.

It is a cardinal rule that parol or extrinsic evidence is inadmissible to add to, contradict, or vary the terms of a written contract. It may be admitted to ascertain and make certain the parties and subject-matter of an agreement, to apply the contract to its subject, to prove any collateral independent fact about which the written agreement is silent, and to remove latent ambiguities. In such cases it is used not to contradict or vary the written instrument but to aid, uphold and enforce it as it stands. It is insisted that the excluded evidence in this case was admissible to prove such a state of case as would give rise to an implied warranty by the vendor, and that this can be done notwithstanding the written agreement. In support of this position special reference is made to the case of *Shepherd vs. Pybus,* 4 *Scott's N. R.,* 434, in which TINDAL, C. J., remarks, "as to the ground of objection against the admissibility of the evidence, that, the contract being in writing no such warranty could be implied, we think the distinction to be taken is, that, where the warranty is one which the law implies, it is clearly admissible notwithstanding there is a written contract." Upon the subject of warranties in the sale of goods the authorities both English and American are very numerous. The most recent leading English case is that of *Jones vs. Just,* 3 *Queen's Bench (Law Rep.,)* 197, where it was decided that under a contract to supply goods of a specified description which the buyer has no opportunity of inspecting, the goods must not only in fact answer the specific description but must be saleable or merchantable under that description, and that the maxim *caveat emptor* does not apply to a sale of goods where the buyer has no opportunity of inspection. In that case the Court reviews the previous cases and holds that they establish the following propositions:

Rice *vs.* Forsyth.

1st. Where the goods are *in esse,* and may be inspected by the buyer, and there is no fraud on the part of the seller, the maxim *caveat emptor* applies, even though the defect which exists in them is latent, and not discoverable on examination, at least where the seller is neither the grower nor the manufacturer. The buyer in such case has the opportunity of exercising his judgment upon the matter; and if the result of the inspection be unsatisfactory, or if he distrusts his own judgment he may if he chooses require a warranty. In such a case, it is not an implied term of the contract of sale that the goods are of any particular quality or are merchantable.

2nd. Where there is a sale of a definite existing chattel specifically described, the actual condition of which is capable of being ascertained by either party, there is no implied warranty.

3rd. Where a known described and defined article is ordered of a manufacturer, although it is stated to be required by the purchaser for a particular purpose, still if the known, described and defined thing be actually supplied, there is no warranty that it shall answer the particular purpose intended by the buyer.

4th. Where a manufacturer or dealer contracts to supply an article which he manufactures or produces, or in which he deals, to be applied to a particular purpose, so that the buyer necessarily trusts to the judgment or skill of the manufacturer or dealer, there is in that case an implied term or warranty that it shall be reasonably fit for the purpose to which it is to be applied. In such a case the buyer trusts to the manufacturer or dealer and relies upon his judgment and not upon his own.

5th. Where a manufacturer undertakes to supply goods, manufactured by himself, but which the vendee has not had the opportunity of inspecting, it is an implied term in the contract that he shall supply a merchantable article. And under this head is classed the case of *Shepherd vs.*

*Pybus*, where there was a sale by the builder of an existing barge which was afloat, but not completely rigged and furnished. Here, inasmuch as the buyer had only seen it when built, and not during the course of the building, he was considered as having relied on the judgment and skill of the builder that the barge was reasonably fit for use.

In 1 *Parsons on Contracts*, 468 *to* 472, the learned author states that the principle that, if a thing be ordered of the manufacturer for an especial purpose, and it be supplied and sold for that purpose, there is an implied warranty that it is fit for that purpose, has been carried very far, but it must however be limited to cases where a thing is ordered for a special purpose, and not applied to those where a special thing is ordered, although this be intended for a special purpose; for if the thing is itself specifically selected and ordered there the purchaser takes upon himself the risk of its effecting its purpose; but where he orders a thing for a special purpose or to do a specific work, there he puts this risk upon the person who is to supply the thing. He also states (as the result of the authorities in this country,) that where the contract of sale is in writing and contains no warranty, there parol evidence is not admissible to add a warranty; this rests upon the familiar principle that the writing is supposed to contain all the contract; and further, (what is undoubted law every where,) that if there be a warranty in writing it cannot be enlarged or varied by parol evidence. There is also a very able review of the authorities by Judge Selden in the case of *Hoe vs. Sanborn*, 21 *N. Y.*, 552, where it was held that upon the sale of a chattel by the manufacturer a warranty is implied, that the article sold is free from any latent defect growing out of the process of manufacture, and that he will be held liable upon such warranty, where it is proved or is to be presumed that he knew of the defect. The decisions in this State (which of course are of binding force here,) bearing upon the subject

Rice *vs.* Forsyth.

are *Johnston vs. Cope*, 3 *H. & J.*. 89 ; *Osgood vs. Lewis*, 2 *H. & G.*, 495 ; *Hyatt vs. Boyle*, 5 *G. & J.*, 110 ; *Hunter & Rodewald vs. Atwell*, 19 *Md.*, 157, *and Wheat vs. Cross*, 31 *Md.*, 99.

But in this case it is unnecessary for us to inquire and ascertain whether there is, upon this important question, any conflict between the English decisions and the weight of authority in this country, or whether there is anything in our own adjudications which would prevent us from accepting and adopting the law as stated in *Shepherd vs. Pybus*, or the fourth and fifth propositions in *Jones vs. Just;* nor need we determine whether there is in the present contract any express warranty which would preclude the implication or proof of any other upon the maxim " *expressum facit cessare tacitum ;*" because we are clearly of opinion the proffered testimony entirely fails to bring the case within any of the authorities referred to. The proof is, that the plaintiff carried on business (but what kind of business is not stated) at his shop on Biddle street, and the defendant testified that before this contract was made he informed the plaintiff of the purpose for which the machinery therein mentioned was wanted, viz : *for sawing and splitting wood*, (which fact was on cross-examination admitted by plaintiff himself,) but that he *did not tell* the plaintiff *the amount* of sawing and splitting he *wished or expected* the engine he proposed to purchase to do. He also testified that the engine and machinery did in fact saw and split wood, though not *as well* as *he expected* it should ; that it would saw the wood and then split it, but would not run the saw and splitter at the same time. He also admitted that the engine as bought was a second-hand article ; and further testified that he knew nothing of machinery, and that the plaintiff was a *practical machinist, and had been for eight years*, and that he relied entirely on the skill and judgment of the plaintiff in purchasing said machinery ; that the plaintiff told him

the engine then in his shop, together with a boiler and wood-splitting machine not then in his shop, but which he would furnish, would answer the "purpose above stated," (that is, as we infer, the purpose of *sawing and splitting wood,* the only purpose the defendant had stated to the plaintiff he wanted it for,) and that he thereupon entered into the contract in question; that upon trial the machinery "was found to be totally unfit for said purpose of sawing and splitting wood *in the quantity* the defendant *desired it should,* as before mentioned;" that he notified the plaintiff "of the same," (that is, that it was unfit to saw and split wood in the quantity he desired it should,) and the plaintiff himself admitted "the same," and to meet *the wishes* of the defendant, he proposed to remove the engine first put up, and erect a new, larger and better one if defendant would advance him $200, part of the original contract price of $600, to which defendant assented, and in pursuance thereof the written agreement of the 19th of September, 1873, was made. This contract in nowise suspended or abrogated the previous contract of the 12th of August. On the contrary one of its express terms is, that it is "in nowise to conflict with or to interfere with any previous contract that may exist between the aforesaid parties; it is to be simply an exchange of engines." The defendant further testified that after the second engine was erected the first boiler was found to be utterly unfit for it, and he was obliged to expend $400 to get a boiler to do his work and suitable for said purpose; and that "the insufficiency of said machinery to do what defendant *expected of it* could not be discovered by him on inspection, but only on trial."

Now, it is quite clear from this evidence that the buyer had ample opportunity to inspect all the articles purchased, if he did not in fact see and examine all of them; and it cannot be inferred from the mere fact that the seller had been a practical machinist for eight years, that he was a

*manufacturer* of, or *dealer* in, the particular machinery sold, or that he was engaged in the business of manufacturing or selling machines for sawing and splitting wood. On the contrary, from the fact that the engine was a second hand article, and was in his shop, and that the boiler and wood-splitting machine were not there and that he had to procure them elsewhere, the plain inference is, that he was using or had used the engine, with its appliances, in some other business, in which as a machinist he was or had been engaged, and that he wished to sell it because he desired to break up his business, or for some other reason. Again, it is conceded the buyer did not disclose to the seller what amount of work he expected the machinery would perform, and it would be very strange if there could be an implied warranty that it should do as much as he expected, without any proof that his expectations were reasonable or unreasonable. No case has gone that far. In *Shepherd vs. Pybus* there was no evidence of any distinct notice or declaration to the seller, at the time the purchaser inspected the barge or entered into the contract, of *the precise service or use* for which he purchased it, viz: to carry cement from his manufactory to London, and therefore, the Court say they were not satisfied that the jury had come to a right conclusion when they found "that the barge was not reasonably fit for use as an ordinary barge, which is the meaning and extent of the warranty laid in the declaration and implied by law," and consequently they granted a new trial. But still further, the evidence fails to disclose what an ordinary machine of this kind ought to accomplish, or that such machines, in their usual and ordinary use, saw and split wood at the same time, and hence there is nothing to show the machinery did not subserve the only purpose which the purchaser told the seller he wanted it for, (it being conceded that it would and did in fact both saw and split wood,) or that it would not do as much as ordinary machines of that kind usually perform. We are

therefore quite satisfied this is not a case in which, under any of the authorities, there can be any implied warranty other than that of title.

The Court's instruction does not exclude the testimony as to what occurred between the parties *after* the contract was made, nor the written agreement of the 19th of September. That evidence, if admissible at all, was so only in connection, with the defendant's other proof on that subject, to show non-performance by the plaintiff of the original contract of the 12th of August, and we must assume it was admitted for that purpose. Performance of that contract consisted in the *delivery* of the *specific articles* therein mentioned, complete and in good order. The contract does not bind the plaintiff, as stated in the defendant's second prayer, " to furnish the defendant with the machinery therein mentioned, *and all the usual and necessary appliances to complete the same and put the same in good running order*," nor does it include the articles mentioned in the defendant's fifth prayer.

By the second part of the Court's instruction the jury were told that if they found the plaintiff did not perform his part of the contract, then the defendant is *entitled* to have deducted from the *contract price* remaining unpaid such *damages* as they may find the defendant has sustained by such non-performance, and objection is made to it because it allows the damages to be deducted from the contract price. This, however, is precisely what the defendant, by his third prayer, requested the Court to do, and he cannot be heard to complain that the Court gave to the jury the very law which he himself asked for. But we think the Court was right in so instructing the jury in this case. The proof shows the articles were delivered and accepted, and retained by the defendant, and the only damages which the evidence discloses he could have sustained by the non-performance of this contract on the part of the plaintiff, was the difference between the contract

price and what the articles as delivered were actually worth. Indeed, the law of the case as we have stated it, would not permit him to recoup any other damages. The effect of the instruction, therefore, was to allow the plaintiff to recover, as he well could, under the common counts in his declaration, what the articles when delivered were reasonably worth. We discover no inconsistency between this ruling and the principles, (which of course we do not mean to disturb) announced in the cases of *Coates & Glenn vs. Sangston,* 5 *Md.,* 121 and *Denmead vs. Coburn,* 15 *Md.,* 29. There was consequently no error in this part of the Court's instruction, nor in the rejection of the defendant's fourth prayer. The remaining portions of the instruction given by the Court are entirely free from objection.

It follows from what we have said there was no error in the rulings excepted to, and the judgment must be affirmed.

*Judgment affirmed.*

(Decided 9th February, 1875.)