(Decided July 13th, 1860.)

---

# WILLIAM ORTWINE *vs.* THE MAYOR & CITY COUNCIL OF BALTIMORE.

Under a declaration going for damages to the plaintiff's property, by the wrongful and improper grading of a *certain avenue,* the plaintiff cannot claim compensation for any damage or loss by reason of the grading and paving of *other streets.*

A *permanent* injury to a lot, by a gully made by water flowing from a street, which gully was made *before* the plaintiff acquired his title to the lot, and which now carries off the water, is a cause of action accrued to the *former owner,* and has not devolved on the plaintiff.

APPEAL from the Court of Common Pleas.

This action was brought on the 21st of April 1857, by the appellant against the appellees, to recover damages for injury done to the plaintiff's property.

The *first* count of the declaration alleges, that the defendants have damaged and injured the plaintiff to the value of $495, by causing a large body of water to flow over his land, situated on Walsh street, by the wrongful and illegal acts of the said city, and its agents, in grading Pennsylvania Avenue,

a public highway in said city, and in not providing proper and sufficient sewers to carry off the natural flow of water down said avenue.

The *second* count alleges, that the plaintiff is owner, and has been for six years past, of a valuable lot of ground in said city; that he was the owner thereof before, and at the time, the western portion of Pennsylvania Avenue was graded and paved, by order of the city authorities; that at the time of such grading, the water, which naturally flowed down the avenue, was carried off without injury to his property, but that, by an illegal and improper grade of such avenue, a much larger body of water is forced into the avenue, and flows over and upon his land, situate contiguous thereto, to his great injury and damage, to the value, of $485.

*Plea,* that the defendants did not commit the wrong alleged in the declaration against them.

*1st Exception.* The facts, proved in the case, show, substantially, that the plaintiff was the owner of a lot fronting on Walsh street, which he had leased in 1851, with the privilege of purchase, and which was conveyed to him in fee, in 1856. Walsh street, and a lot owned by one Seltzer, intervene between the plaintiff's lot and Pennsylvania Avenue on the north, and Hoffman street intersects this avenue at right angles a short distance to the west of this lot. By the grade of the avenue, as *established* by the city authorities, in April 1847, and as appears from the grade book, the grade where the avenue is intersected by Hoffman street, requires a descent of eight inches to the centre of that street, and a rise from the centre on the other side, thus making that street a channel to receive and carry off the water coming down the avenue from the west. But the avenue as *actually constructed* and *graded,* in 1847, by the city authorities, not pursuing the grade as established, raised the centre of Hoffman street, instead of lowering it, and thus causes the large flow of water from the west to rush across Hoffman street, and in times of heavy rains, to rise two or three feet in depth on the avenue, east of Hoffman street, where it forces an outlet through a sewer, known as Seltzer's, and thence

through another sewer, made by the city, under Walsh street, over and through the plaintiff's lot.

Before the avenue was graded, a large portion of the water falling thereon passed off before reaching Hoffman street, through an old sewer, west of Dolphin street, which the city filled up when the avenue was graded and paved. Both this and Seltzer's sewer were originally constructed by the turnpike company, and were the natural channels of drainage. If Seltzer's sewer should now be stopped up, the consequence would be to flood all the surrounding property.

Walsh street was not graded or paved when the plaintiff bought his lot. Its grade was established in 1854, and his lot was eight or ten feet below such grade, and he had to fill his lot up, leaving a gully five or six feet wide, for the water from Seltzer's sewer to pass through in order to prevent his whole lot from being submerged.

When the avenue was paved, the bed of Hoffman street was raised seven inches at the curb, and the grade of the avenue was not fixed to correspond with that of Hoffman street, and this discrepancy is one cause of the difficulty in relation to the flow of the water east of Hoffman street.

One of the witnesses says he considers the damage to the lot of the plaintiff, by the increased flow of water, since the grading of the avenue, to be about $500. Another says, he considers the increased flow of water across the plaintiff's lot, and the gully, to be a permanent injury, to the extent at least of $500.

The plaintiff then asked an instruction to the jury:

That if they find, from the evidence, that the plaintiff leased the lot in question, on Walsh street, in 1851, from Mr. Smith, and obtained from him the fee-simple in 1856, and shall further find the grading and paving of Pennsylvania Avenue, Hoffman street, and Walsh street, as shown by the evidence, and the grading and paving of the latter street in 1854, and shall further find, from the evidence, that prior to the grading of said avenue, there was a sewer west of Dolphin street which carried off a large portion of the water flowing down the avenue, and prevented such water, or a

large portion thereof, from passing Hoffman street, and finding its vent through the sewer at Seltzer's, as spoken of in the evidence, (if the jury shall find the facts so to be,) and shall further find that, in grading and paving Walsh street, the defendant, by its agents, caused a sewer to be constructed under Walsh street, and that by reason of said sewer, the water from the avenue has been concentrated and caused to pass through the same, in and upon the land of the plaintiff, and shall further find that, since the grading of said avenue, a much larger flow of water has thereby been caused to flow down the same, and over the plaintiff's land, and shall further find that the grade of Hoffman street was altered in the paving thereof, and shall further find that there was a gutter contemplated, and directed to be made, down the centre of Hoffman street, under the grade affixed by the city commissioner in 1847, and that no such gutter was made in the centre of Hoffman street, and that, in consequence thereof, a large amount of water rushes over Hoffman street, down the avenue, easterly, and through the sewer at Seltzer's aforesaid, and thence through the sewer under Walsh street, and over the land of the plaintiff, and that, if said gutter had been made down Hoffman street, the quantity of water flowing over the plaintiff's land would thereby have been greatly diminished, and if the jury shall find that the plaintiff has received injury and damage, by reason of the increased flow of water (if the jury shall so find the facts) over his land, then the plaintiff is entitled to recover in this case, under the issue as made up by the pleadings in this cause.

The court (MARSHALL, J.) rejected this prayer, and to this ruling the plaintiff excepted.

*2nd Exception.* The defendants then asked for the following instructions:

1st. That the city authorities, under the charter of the city, are the exclusive judges of the time, place and manner in which the streets, within the limits of the city, shall be opened, graded and paved, and made highways, and that their action in these respects cannot be reviewed in this court, either by judge or jury, but are binding upon both the one and the other.

2nd. That even if the jury should find from the evidence, that the lot of the plaintiff was overflowed by water, and damaged, in consequence of the manner in which Pennsylvania Avenue and Hoffman streets were graded and paved, and that said streets were so graded and paved, in substantial compliance with the proceedings before the city commissioners in 1847, as given in evidence, and without material variation therefrom, then the plaintiff is not entitled to recover, and that it is not rightfully within the power of this court to inquire, whether the injury to the plaintiff's property might not have been avoided, by a better and more judicious plan of grading and paving said streets than was adopted by said commissioners.

3rd. That if the jury find the facts stated in the foregoing prayers, but also find, that the grade of said streets was altered in the paving thereof, as stated in the evidence, with the approval, and by the direction, of the city commissioner, whereby the overflow of water on the plaintiff's lot was increased from what it otherwise would have been, and if the jury find that, in the year 1848, when they were completed, if the jury find from the evidence that in that year the grading and paving were completed, and that the said streets were then accepted by the competent authorities of the city, and have ever since remained in that condition, then the plaintiff is not entitled to recover in this case against the defendants.

. 4th. That the acceptance, by the city commissioner, of said streets, if the jury find it from the evidence, as duly graded and paved, is conclusive evidence that it was so graded and paved.

5th. That if the jury find, from the evidence, that the grading and paving of said streets were completed in the year 1848; that the plaintiff leased his lot in the year 1851, and afterwards received a conveyance of it in fee, in the year 1856; and if the jury further believe that, and in consequence of injury to said property by its being, as stated in the evidence, overflowed by water, although they may find that as a consequence of said grading and paving, yet that the cause of action, if any, which arose to said lessor and grantor, pre-

vious to the year 1851, on account of injury to the said lot, in manner aforesaid, did not pass, by virtue of either of the aforesaid conveyances, to the said plaintiff, and he is not en- titled to recover.

The first prayer was admitted by the plaintiff, and the court rejected the second, third and fourth, and granted the fifth, and to the granting thereof the plaintiff excepted, and, the verdict and judgment being against him, appealed.

The cause was argued before LE GRAND, C. J., TUCK and BARTOL, J.

*Benj. C. Barroll,* for the appellant:

1st. There was error in rejecting the appellant's prayer. The proof shows that the appellant was injured, in his prop- erty, by the city and its agents, chiefly in consequence of the paving of the avenue in a different manner from the estab- lished grade. For this violation of law, and for the injury so done, the city is liable in damages. The city cannot alter or establish the grade of a street, if, in so doing, it causes a larger flow of water over the adjacent property, without being liable in damages for the injury produced. The city is bound to carry off all the water falling upon its streets without injury to its citizens. If a street is so graded and paved by the city, in violation of the grade previously established, and by reason of such violation, a larger body of water is thrown upon the land of a citizen, the city is responsible for the damage. If the city makes the grade of two streets to conflict where they intersect, and injury thereby ensues, the city is responsible. No case can be cited of an injury occurring to a party in con- sequence of an unlawful act on the part of a corporation, wherein the corporation has not been held liable in damages. The city has authority to grade streets, and when exercised, so long as the grade continues unaltered, the city continues bound by it, and hence it cannot rightfully make conflicting grades, or rather in such case it will be responsible for all in- jury arising from the conflict. Whenever the city establishes a grade, and its officers in doing the work violate the grade

so established, and injury ensues by reason of such violation, the city is responsible. The city has no authority to create a nuisance; on the contrary, they are bound to prevent nuisances and to remove them if they occur without their direct conduct; that is, the city is responsible for all damage arising from a public nuisance either produced or suffered to continue. The city has no authority to build conduits to convey the water falling upon its streets, either into my parlor, shop, or upon my land. But it is bound to construct sewers, keep them in repair, and in such condition as that all the water may be carried off without detriment to private property. In support of these positions, see the Acts of 1797, ch. 54, 1782, ch. 17, sec. 8, and 1829, ch. 114, and, also, 8 *Md. Rep.*, 353, *Henderson's Case;* 9 *Md. Rep.*, 160, *Marriott's Case;* 7 *Pet.*, 243, *Baron & Craig's Case;* 21 *How.*, 210, *Phil.*, *Wil. & Balt. Railroad Co. vs. Quigley;* 9 *Iredell*, 73, *Meares vs. City of Wilmington;* 4 *Comstock*, 196, *Radcliff's ex'crs vs. City of Brooklyn;* 3 *Hill*, 614, *City of New York vs. Furze; Ibid.*, 534, *Bailey vs. City of New York.*

2nd. There was error in granting the appellee's fifth prayer. The injury was a continuing and increasing one. The plaintiff did not claim for injury accruing to his lessor, but for actual injury to himself and his own property. If his lessor chose to submit to the illegal acts of the city, the plaintiff was not bound to do so after he became the proprietor. Any party may sue the city who sustains injury by the unlawful conduct of the city, no matter if the former owner, or owners, of the same land have forborne to sue for a century back.

*Archibald Stirling*, for the appellee, argued:

1st. That the city authorities are the *exclusive judges* of the time, place and manner, in which the streets of Baltimore should be opened, graded and paved, and made highways.

2nd. That the corporate authorities had power to grade this avenue, and that no action could be brought by the plaintiff for any consequential injury done to his property, re-

sulting from the exercise of this power by the corporate autho-rities; and that if the plaintiff sustained any damage, in fact, thereby it was what the law regards as *damnum absque injuria.* 12 *Missouri,* 414, *City of St. Louis vs. Gurno.* 18 *Penn. State Rep.,* 187, *O'Connor vs. City of Pittsburgh.* 26 *Barb.,* 133, *Ely vs. City of Rochester.*

3rd. That even if an action would lie for the cause afore-said, yet the injury complained of was the result of acts done long before the appellee became the owner of the property injured; and that he acquired no right to sue for such injury by virtue of the subsequent conveyances to him of the lease-hold interest in 1851, and the fee-simple in 1856, in said pro-perty; and no right of action passed or would have passed by operation of these conveyances.

Tuck, J., delivered the opinion of this court.

The appellant sued the appellees to recover damages for injury done to his property, "by the wrongful and illegal acts of said city and its agents in so grading Pennsylvania Avenue, a public highway, in said city, and in not providing proper and sufficient sewers to carry off the natural flow of water down said avenue," and, as alleged in the second count in the declaration, he complains "that he was the owner of the lot in question before and at the time that that part of the Pennsylvania Avenue was graded and paved by order of the city authorities; that at the time of such grading the wa-ter was carried off without injury to his property, but that by an illegal and improper grade of the avenue, a much larger body of water is forced into the avenue, and flows over and upon his land," for which, also, he claims damages. We have made allusion to the pleadings, because they are brought to our notice by the plaintiff's prayer, which bases his right to recover on the jury finding certain facts in connection with the grading and paving of Hoffman and Walsh streets and the avenue, as the cause of damage to his property, which facts, it is averred, entitle him to recover, "under the issue as made up by the pleadings in the cause." The declara-tion goes for damage by the wrongful and improper grading of

the avenue, and makes no mention of the other streets named in the prayer. It is plain, therefore, that, conceding his right to recover for the acts of the city's agents in grading the avenue, under these pleadings he could not claim compensation for any loss or damage by reason of the grading and paving of Hoffman and Walsh streets. This prayer was therefore properly refused.

The defendant offered five prayers—the first of which was granted by consent, being the instruction given by *Chief Justice Taney*, in the case of *Hughes vs. The City*, in 1855; the second, third and fourth were refused, and the fifth granted, from which last the plaintiff appealed.

The plaintiff's counsel admits that he has not succeeded to any cause of action of his predecessor in the title for damage done to the lot by the alleged improper grading before he became owner thereof, but he says that the action contemplates no such recovery, but only claims damages for injuries resulting from the flow of water since his purchase, and he contends that the fifth prayer is erroneous, because it denies his right to recover, for subsequent as well as previous injury. In disposing of this point, therefore, we must see what the suit is for and what is the case made by the evidence.

If, under the pleadings, he could recover for damage by the water overflowing his land since he became owner, we think the case does not show any such. The witnesses who testify on the question, speak of that kind of damage which must have occurred while Smith was owner, causing a permanent injury to the freehold, for which he, if any person, had the right to sue. Were it conceded that a party may complain of a nuisance when he purchases the property affected by it, with a knowledge of its existence, it is not shown here that the water from the avenue affects his lot, as a recurring nuisance. The damage is estimated at $500. Do the witnesses mean that every flood causes that amount of damage, or that the property is intrinsically and permanently depreciated that much by the original grading and paving of the avenue? There is a gully through which the

water passes. If that was made by the water before the plaintiff acquired his title, and now carries it *off*, and if that is the damage referred to by the witnesses, as we think the case shows, it is clear that such cause of action accrued to Smith, and has not devolved on the present owner. There was, therefore, no error in the conclusion of this prayer, that the plaintiff could not recover, it being merely an assertion of the legal proposition that, in respect to the cause of action set forth in the prayer, the plaintiff had failed in making out his case.

As the judgment must be affirmed, for these reasons, we are relieved from the necessity of passing upon the questions submitted for our consideration, as to the power of the corporation in respect to the acts out of which the suit is said to have originated.

*Judgment affirmed.*

(Decided July 13th, 1860.)