(Decided February 10th, 1898).

---

# THE BALTIMORE AND SPARROWS POINT RAILROAD CO. *vs.* WM. T. HACKETT.

*Railroad Embankment Obstructing the Flow of Surface Water— Liability of Railroad Company to Lessee of Land Overflowed— Expert Testimony.*

When a railroad company constructs an embankment across a farm so that the natural drainage of the water there is obstructed, it is bound to provide and maintain sufficient outlets for the flow of water, and if this duty is not performed the company is liable for the damage caused to the occupant of the farm by the water which after a heavy rain is dammed up and made to overflow the fields, thereby destroying the crops.

The defendant in such case is not relieved from liability because if the plaintiff had entered upon the land of the defendant and removed obstructions from a ditch which defendant was bound to keep in proper condition, the injury to the crops would not have occurred.

In an action against a railroad company to recover damages for its
failure to construct drains along and under an embankment in con-
sequence of which the natural flow of the water was interrupted and
the plaintiff's crops were flooded, an expert witness may be asked
whether in his opinion the outlets for water actually provided by the
defendant were adequate.

An action lies by the lessee of land against a railroad company whose
embankment obstructs the natural drainage of the land and which
failed to provide and maintain proper outlets for the water, although
the obstruction existed when the plaintiff became the lessee.

Appeal from a judgment of the Circuit Court for Har-
ford County (WATTERS, J.)   The jury returned a verdict
for the plaintiff for $1,000.

The cause was argued before McSHERRY, C. J., BRYAN,
BRISCOE, PAGE, BOYD and PEARCE, JJ. (Jan. 13, 1898).

. *Alexander Preston* (with whom were *J. Alexander Pres-
ton*, *Walter W. Preston* and *Robert Ludlow Preston* on the
brief), for the appellant.

*Stevenson A. Williams* (with whom was *Frank I. Duncan*
on the brief), for the appellee.

PAGE, J., delivered the opinion of the Court.

The appellee was possessed of a tract of land in Balti-
more County upon which he was engaged in growing vege-
tables and other farm products for market.   Through this
land passes the railroad of the appellee.   It is alleged in the
*narr.* that the appellee did not "properly provide and main-
tain gutters and drains along and under its railroad for the
natural drainage of the land adjacent" thereto; and in con-
sequence of which the premises of the appellee were flooded
and crops of vegetables and farm products were destroyed.

The appellee is the lessee of the premises on which the
damages alleged occurred.   His property lies on both sides
of and adjacent to the railroad.   It slopes from the east to
the west, so that prior to the construction of the railroad
the surface water was carried off by natural drains and

ditches running eastwardly and westwardly to Colgate Creek. The bed of the road ran across these drains and ditches, and to take the water formerly carried by these, a ditch was opened on the property of the railroad and on the east side of the tract to Colgate Creek. · On the east, on top of the hill which slopes rapidly to the railroad, is the barn of the appellant, from which a road runs to the crossing. The ditch on the company's property is parallel with the track and a few feet therefrom. It extends from St. Helena Station to Colgate Creek. At the farm crossing, where the road from the barn is about on a level with the tracks, there is a culvert, intended to carry the flow of the water coming from the north. There are no drains from the east to the west side of the tracks. The land of the appellee on the east side of the track being higher, towards the east, the surface water falling on it, must flow down to the ditch and be carried off therein. If this becomes obstructed or is insufficient for the purpose, the water will be accumulated on the land of the appellee ; and should it be held back by the embankment of the railroad in sufficient quantities, it will eventually rise higher than the level of the farm crossing, and flow over and inundate the land of the appellee that lies on the west of the tracks. There was also evidence going to show that in June, 1896, the ditch had been permitted to become obstructed with debris of various kinds, to such an extent as to be inadequate to carry off the water flowing into it, from the higher land to the east and from St. Helena Station ; so that on several occasions the water became so dammed up, as that the land of the appellee on both the east and west sides of the track was inundated and the crops thereon destroyed.

The first exception presents a question of evidence. The witness McLean had testified that he was a civil engineer, and had been engaged in the construction of railways ; and that he knew the property of the appellant, and had made surveys of it, the results of which were shown on the plat offered in evidence. He then described the location of the

appellant's tracks and the embankments, the slopes of the land of the appellee, and the provision made by the appellant for the water coming from the east and from St. Helena Station. He was then asked by the counsel for the appellee, whether, in his judgment as an engineer, " in view of the lay of the land " the railroad was properly constructed " where there are no outlets to the west side " and if so " to what extent there should be outlets for proper drainage ? " to which the witness replied, that he thought " it would have been the part of good work to have located at different points cross-drains, to have relieved the pressure of the water against the railroad, and also to have carried off that water."

The ground of the objection, as stated in the brief of counsel, and insisted on at the argument, was that there was no obligation upon the defendant, the appellant, as against the appellee, to provide any drains under its tracks, for the reason that the appellee having become possessed of the property after the construction of the railroad, any damage done by improper construction accrued to the former owner. It was therefore contended that the testimony sought to be elicited by the question and contained in the reply was irrelevant. The only case cited to support this position, was that of *Ortwine* v. *M. & C. C., &c.*, 16 Md. 387. In that case the plaintiff sued the city to recover damages for injury done to his property by the wrongful and illegal act of the city in grading a city street. It appeared that the plaintiff became possessed of the property after the grading and paving of the street, and that the damage consisted in the formation of a gully through which the water passed. It was not shown that the water affected the property as a recurring nuisance, but that by the formation of the gully the property was intrinsically and permanently injured. The Court held, that such injury having been occasioned before the plaintiff acquired his title, with a knowledge of its existence, furnished a cause of action which had not devolved on the plaintiff, but had accrued to

the former owner. The case at bar is not of the same character. Here the complaint is, that by reason of the failure of the appellant properly to construct and maintain its road, and to provide and maintain suitable drains, the surface water after each rain was backed up and overflowed the premises of the appellant, and destroyed his crops of vegetables. The questions therefore at issue were, was it the duty of the appellant to provide such drains, and if it was, had that duty been performed. The witness had testified that by reason of the slope of the land to the east of the tracks, the surface water falling on that part of the appellee's property, flowed by natural channels, before the construction of the railroad, from the higher land, westwardly down to and over and across the ground now occupied by the bed of the railroad to Colgate Creek. The embankment of the railroad thus intercepted the natural flowage, and to take the place of the natural drains, by which the water was so carried, the company had constructed a ditch parallel with its tracks, and on its own property, and by this ditch all the water that came from the appellee's property lying to the east of the tracks, as well as all that came down from the station, was conveyed to the creek. It is clear that if this artificial means of flowage was insufficient, or was allowed to become obstructed, so that damage ensued to the appellee, there would arise a cause of action against the appellant in favor of the appellee. In such a case, the Railroad Company, having changed the natural flow, would be bound to provide proper outlets of ample capacity to carry off the water, so that it should not be injuriously accumulated on the land of the adjacent owners. *P. W. & B. R. R. Co.* v. *Davis,* 68 Md. 290.

It was therefore relevant to inquire whether the outlets actually provided were adequate, and the witness being an expert, could very properly be called upon to express his opinion whether they were or not.

The other exception brings before us the action of the

Court in disposing of the instructions asked for by the appellant. Its first, second, fourth and sixth prayers were granted, but the third and fifth were rejected. The third announces as a legal proposition, that if the appellee saw that the ditch and culvert were obstructed by sand, grass, &c., so that his crops were liable to be injured, and by "labor or reasonable outlay of money could have stayed or avoided such injury," then "all the consequences resulting from his failure or neglect to use timely and reasonable precautions to prevent the injury complained of should fall upon the plaintiff." We have already stated that the appellant having obstructed the natural flow of the surface water, was bound to provide adequate ditches or culverts for its passage, and to maintain them in proper condition, so that the adjacent land should not be injured. Moreover it is conceded, the ditch running parallel with the tracks after the construction of the embankments of the railroad company was the only exit for the water coming from the higher land to the east, and that this ditch was on the land of the appellant. As applied to this case, the theory of this prayer amounts to this, that though it may have been the duty of the appellant to provide sufficient passage for the water, yet it was also the duty of the appellee, when he saw that the ditch was obstructed, to enter upon the premises of the appellant, and remove the obstructions, if he could do so, "by labor or reasonable outlay of money." It must be observed also, that the alleged negligence of the appellee in so failing to remove the obstructions, has no connection with the commission of the alleged wrong of the appellant. It is not contended that the obstructions were placed in the ditch by the appellee, or that he was in any respect responsible for their presence there. The proposition of the prayer is, that the appellee was bound to remove them, if he knew of them, so as to avert the consequences of the appellant's failure to perform the duty of keeping the ditch in proper condition. We have been cited to no case that supports this contention. The doctrine,

that after the commission of the tort the party injured must do what he can to save himself from injury, provided it can be done by reasonable exertion and expense, has been held in many cases. But this rule cannot be invoked by a party who has caused the injury, to defeat the right of the injured party to maintain his action. It goes only to the question of assessing the damages, and operates to deprive a party from the right of recovering, to the extent of such consequences as result "from his own willful failure or gross neglect to use timely and reasonable precautions to prevent an *extension* or increase of the injury." But the rule should not be extended, in a case like this, so that the duty to lessen the loss arises before the commission of the breach. These principles are distinctly announced in *Lawson* v. *Price*, 45 Md. 137, relied on at the argument by the counsel for the appellant. There this Court, speaking through ALVEY, J., said: "After the wrong was committed it was certainly the duty of the appellee to avoid the consequences of that wrong as far as he reasonably could. If, by labor or a reasonable outlay of money, he could have stayed or avoided the consequences of the appellant's wrong he should have done so. * * * * It is a question to be considered in assessing the damages and does not go to the right of the plaintiff to maintain his action and recover against the wrongdoer." We do not think this rule can be invoked by the appellant in this case to excuse itself from the consequences of its alleged neglect. *Sutherland on the Measure of Damages*, sec. 88 to 90 ; *Smith* v. *Chicago R. R. Co.*, 38 Iowa, 518–523 ; *Plummer* v. *Penobscot Lumbering Co. Ass.*, 67 Maine, 367 ; *Gilbert* v. *Kennedy*, 22 Mich. 117.

The appellant's fifth prayer was properly rejected. By it the jury were to be told, that if they found that "the water or any part of the water flowing over the road crossing, * * ran down from the plaintiff's land, and was not caused by the culvert, then they are entitled to consider the injury done by said water in estimating the damages, if

they find any verdict for the plaintiff." It was offered in mitigation of damages ; and while its terms are not very clear, we think its meaning is, that the jury was not to include in the damages they might find, anything for the injury caused by the water that ran down from the plaintiff's land, provided such flow was not caused by the culvert. The prayer therefore practically tells the jury that the defendant could not be liable for any water passing over the crossing, provided it came from the plaintiff's land, and its flow was not caused by the culvert. It wholly ignores the evidence tending to show that the water flowed over the crossing by reason of the damming of it below by the appellants' embankment, and the obstructions in the ditch, and wholly fails to inform the jury as to the relative rights and obligations of the parties, in respect to the water. It in fact assumes as matter of law, that no injury can legally be attributable to the appellant if the water passing over the road-crossing came down from the land of the appellee. There was evidence in the case, as already has been said, tending to show that the ditches and drains before the construction of the railroad carried the water coming down from the appellee's land to Colgate Creek, and that the embankment of the company cut these off, so that the only channel for the water was afterwards through the ditch running parallel with the tracks ; and that by reason of obstructions in this ditch or of its inadequacy to perform the work for which it was created, the water coming from the appellee's land on the east was backed up, until it reached a sufficient height to pass over the road-crossing and inundate the appellee's land on the west of the railroad. If the jury had found these facts the prayer would have misled them, because though they should then have found for the plaintiff, the requirements of this instruction would have precluded them from assessing any damages therefor.

Finding no error in the rulings of the Court the judgment will be affirmed.

*Judgment affirmed.*

(Decided February 10th, 1898).