## DAMAGES TO RIPARIAN OWNER FOR POLLUTION OF A STREAM BY SEWERAGE.

Superior Court of Cincinnati.

THEODORE KIRK AND MARGARET KIRK *v.* CITY OF CINCINNATI.

Decided, April 25, 1925.

*Riparian Rights and Sewage Disposal—Rights must be Acquired or Liability for Damages Arises—Purchase of property after Creation of the Nuisance—Not a Bar to Recovery of Damages—Each Party Liable for its Proportional Share—Where Pollution Flows from Different Sources Contributory Pollution by Plaintiff may be Considered in Mitigation of his Damages—Injunction Lies Against Continuance of a Nuisance Arising from Pollution.*

1. A municipality which dumps sewage into a pure stream to the injury of lower riparian owners without acquiring any right to do so or making compensation therefor, is liable in an action for damages. (*City of Mansfield* v. *Ballictt*, 65 O. S., 451, followed.)

2. Riparian rights are property which pass with the land and the fact that a lower riparian owner, damaged by the pollution of a stream, acquired his property after the creation of the nuisance complained of, does not bar his right to maintain an action for damages and for an injunction to abate a continuance of the nuisance.

3. The pollution contributed by a lower riparian owner to a stream previously polluted by the acts of others above him is not a complete defense unless such pollution amounts to a cause of the conditon complained of, but contributory pollution may be considered in mitigation of damages.

4. Where several municipalities contribute to the pollution of a stream to the damage of a lower riparian owner, each is liable for the proportionate amount of damage caused by its own acts. (*City of Mansfield* v. *Bristor*, 76 O. S., 270 followed.)

5. Where a pure water supply is polluted by the acts of a municipality in dumping sewage therein to such an extent that the condition of the stream constitutes a dangerous menace to the health of the inhabitants along its banks and of neighboring municipalities, a continuance of such nuisance should be enjoined by a court of equity upon such terms as to time, etc., as to permit the erection of proper disposal plants.

*Peck, Shaffer & Williams,* and *Milton Sayler,* for plaintiff.

*Frank K. Bowman,* City Solicitor and *Henry M. Bruestle,* for defendant.

MARX, J.

In this case, the city of Cincinnati stands convicted by the verdict of the jury and its own admissions of having built a trunk sewer known as Muddy Creek Sewer for the purpose of draining a thickly inhabited portion of Cincinnati and having dumped all of the sewage of this area into Muddy Creek. By its acts in so doing, the city of Cincinnati polluted and poisoned the previously pure and potable waters of that stream. No consent or rights were acquired from the property owners along the banks of such stream authorizing its pollution. The plaintiff is the owner of 805 acres of farm land on and adjacent to the banks of said stream. No compensation was paid to the plaintiff for the destruction of his property right to obtain pure water from this stream flowing through his land.

The plaintiff commenced this action to recover compensation in the amount of seven thousand dollars for the damage done to his property by the unlawful pollution of Muddy Creek by the defendant and for an injunction against a continuance of such nuisance.

Upon the trial of the case as an action at law for damages, the jury found a verdict in favor of the plaintiff and assessed the damages at five thousand dollars. The defendant now asks that this verdict be set aside, and the plaintiffs ask for judgment on the verdict and for an injunction against the continuing damages.

The city defends upon the grounds that:

1. It is not liable for its acts.
2. That the plaintiffs are barred from maintaining this action by reason of having purchased their farm after the completion of the sewer; and,
3. That the plaintiffs and others contributed to the pollution complained of.

These points will be considered in their order.

1. Upon its facts this case in indistinguishable from that of the *City of Mansfield* v. *Balliett,* 65 O. S., 451. In that case the riparian right to have a natural water course flow through one's property undiminished in quantity or quality, is held to be a constitutional property right of which, the owner cannot be deprived without just compensation even though taken for a public use, and that any material interference with such right, is a taking of his property.

This conclusion is also supported by the following well considered cases: *The C. & H. C & I. Co.* v. *Tucker,* 48 O. S., 41; *The City of Mansfield* v. *Bristor,* 75 O. S., 270; *Straight* v. *Hover,* 79 O. S., 263.

2. The plaintiffs purchased their farm in 1917. The city completed its sewer and began to dump sewage into Muddy Creek about 1911. The city claims that the purchase of the land by the plaintiffs after the creation of the nuisance bars their right to maintain this action. Upon this point, the court instructed the jury that the right to have Muddy Creek flow through the property in question in its undefiled and natural state was a property right incident to the soil and passed with a conveyance of the land to the plaintiffs who did not take *cum onere,* but acquired their property with its riparian rights, of which, the defendant could not deprive them without compensation.

This charge is fully supported by reason and authority. The general rule is stated in a discussion of defenses under the topic of Waters, 40 Cyc., 599-B, as follows:

''Defendant may set up in defense that he has in some manner, as by consent, acquiscence, release, etc., acquired the right to do the acts complained of, or may interpose a plea of limitations or laches; *but he cannot escape liability by setting up that plaintiff bought the property with knowledge of the existing conditions as to the pollution of the stream.*'' See also, 27 R. C. L., Article 12, at page 1071.

An exact case in point is, *O'Brien* v. *City of St. Paul,* 18 Minn., 176. In that case, damages and an injunction were granted against the city on account of its having emptied sewage

into a natural watercourse to the damage of the plaintiff. The court said in the fourth syllabus.

"It is not material that the sewer was built by the defendant more than six years prior to the commencement of this action, and has been used continuously by the defendant without objection from the former owners of the premises owned by the plaintiff, until the purchase thereof by the plaintiff, and that plaintiff purchased the premises with full knowledge of the existence of the sewer. Nothing in any or all of these facts would change the character of the defendant's act."

Similar rulings were made in *Mayor & Councilmen of Troy* v. *Coleman,* 58 Ala., 570; *Learned* v. *Castle,* 78 Cal., 454; *Alexander* v. *Kerr,* 2 Rawles Rep., (Supreme Court of Pennsylvania), 82; *Bly* v. *The Edison Electric Illuminating Co.,* 172 N. Y., 1.

Without exhausting the list, other cases supporting this rule, are: *The Central Railroad* v. *English,* 73 Ga., 366; *Baltimore & Sparrows Point R. R. Co.* v. *Hackett,* 87 Maryland, 224: *McKee* v. *The St. Louis, Keokuk & Northwestern R. R. Co.,* 49 Missouri Appeals, 174; *Oehler* v. *Levy,* 234 Ill., 595; *Townsend* v. *Bell,* 62 Hunn., 306.

3. The city strongly urged that the pollution of Muddy Creek was contributed to by the plaintiffs and by the village of Cheviot. Whether pollution contributed by the plaintiffs to a stream already polluted by the defendants would constitute a complete bar to an action on their part for the pollution caused by the city, may well be doubted. In our opinion, the better rule is that contributory pollution, unless it goes to the extent of causing the condition complained of, is not a complete bar but may be considered in mitigation of damages. This view finds support in the Treatise on Nuisance, 20 R. C. L., Article 108, and in *Bowman* v. *Humphrey,* 132 Iowa, 234. 109 N. W., 714, 6 L. R. A., (N. S.) 1111, the syllabus of which reads in part:

"In an action to recover damages for fouling a stream so as to constitute a nuisance, it is no defense that plaintiff's own acts contributed to the injury."

In the opinion, a large number of cases are collected, and the L. R. A. annotator states that the authorities are practically uniform.

However, in view of some uncertainty as to the Ohio rule, caused by the unsupported case of *Wheeler* v. *The Fischer Oil Co.*, 6 O. N. P., 309, this court gave the defendant a more liberal charge upon the subject of contributory pollution than the authorities generally warrant and charged the jury as follows:

"Obviously, if you find that the pollution and the nuisance of which the plaintiffs complain in this case is substantially and materially caused and created by their own acts in carrying filth or sewage and other befouling matter into this stream, then the plaintiffs, having created the conditions or having materially and substantially created the conditions of which they complain, are not entitled to recover anything by way of damages and in such case, a verdict should be for the plaintiff. However, if you find that the plaintiffs are not responsible and have not created to any material or substantial extent the pollution of this stream, in other words, if you find that any pollution occasioned by the plaintiff is simply that incidental and natural and reasonable use of the stream that farmers would ordinarily make of it, then their acts in reasonably, ordinarily and naturally making use of the water supply of the stream or the farm adjoining it would not prevent them from recovering for the destruction of a natural water supply and the poisoning of the creek by the city of Cincinnati."

The court then said that any pollution contributed by the plaintiffs not sufficient to substantially or materially cause or create the condition complained of, could be considered in mitigation of damages.

As to the contribution to the pollution of Muddy Creek caused by the acts of the village of Cheviot, the court was most careful to eliminate as elements of damage for which the city of Cincinnati was responsible, all of the pollution discharged through the open creek from Cheviot (draining 200 acres and sewage from 2400 people), although this creek runs through part of Cincinnati. The court also eliminated as elements of damage a portion of the pollution flowing through an open creek out-

side of Cincinnati, draining 85 acres and carrying sewage from about 920 people.

The charge upon this point followed the *City of Mansfield* v. *Bristor*, 76 O. S., 270, in which it is held that where different parties discharge sewage into a stream which intermingle and cause an actionable nuisance, they are not jointly liable in the absence of common design, *"but each is liable only for his proportion of the damages."* (Syllabus 2). See also *City of Columbus* v. *Rohr*, 10 C. C. (N.S.) 320.

The special findings of the jury evince a clear understanding and application of the charge in this connection and forecloses the possibility of any error upon the subject of contributory nuisance. The interrogatories prepared by the defendant and the answers of the jury read as follows:

"Question: What do you find is the entire amount of damage to the use of plaintiff's land and property by reason of the pollution of Muddy Creek from all sources contributed thereto?
"Answer: Seventy-five hundred ($7,500.00) dollars.
"Question: What proportion of this entire amount of damages by reason of the pollution of Muddy Creek from all sources, was contributed by the city of Cincinnati?
"Answer: Five thousand ($5,000.00) dollars.
"Question: Do you find that the plaintiffs contributed to the pollution of Muddy Creek in a material degree?
"Answer: No."

No complaint is made as to the rule of damages laid down by the court which followed the established law upon this and is well expressed in *Standard Hocking Coal Co.* v. *Koontz*, 24 C. C. (N. S.) 369; 5 Ohio Appeals, 84. However, it is claimed that the verdict of the jury is too high. The jury made a thorough examination of the premises. The farm of the plaintiffs is exceptionally large for this vicinity. It is well adapted for stock raising and has been rendered unfit for that purpose. The damages awarded cover a number of years and amount to little more than six dollars per acre. Under these circumstances, the court is convinced that the award is proper.

4. The remaining question concerns the motion of the plain-

tiff for an injunction to stop a continuance of this nuisance. There is no doubt of the offensive and dangerous character of this nuisance which the city of Cincinnati has deliberately created in violation of the common law and the criminal law of this state. The dumping of foul sewage into this pure, natural watercourse which runs through fertile farm land to the Ohio River is fraught with grave danger to the health not only of those bordering upon its banks but to the people of this city and surrounding territory. The evidence in this case shows that in the summer time, there is no other available water supply for the farms on the banks of this stream and that in spite of precautions against it, cattle drink from this stream poisoned by the sewage dumped into it by the city. There is direct evidence in this case that the milk of such cattle with the strong possibility of its containing typhoid germs is sold to dairies for distribution in the city of Cincinnati. One of the farmers testified that although he sold the milk of cattle which drank from this stream for public distribution, he kept a special cow for his own family which was not permitted to drink from Muddy Creek.

The chemical tests in evidence in this case definitely prove the health menace of this stream. There is abundent evidence of the foul and noxious odors which are particularly pungent in summer when the fetid matter is carried into the homes of inhabitants of portions of the city at Fernbank. This condition must be stopped.

There is ample evidence in the case to show that it can be stopped by the erection of proper sewage disposal plants, which appear to be a practicable, sanitary and economical manner of disposing of sewage. *The erection of such plants will eliminate all danger to the health of this community.* The erection of such a plant will help end the unconscionable menace to the life and health of children and adults caused by the pollution of the water supply of this state. There is ample authority for a court of equity to enjoin the discontinuance of a nuisance such as this and, in the opinion of the court, there in an ungent necessity in this case for the exercise of

that jurisdiction. In this connection, we refer to the strong opinion of the Supreme Court in *Board of Health* v. *City of Greenville,* 86 O. S., 1, at page 29.

Upon the power to issue an injunction, see *Reifsnyder* v. *Canton Fertilizer & Chemical Co.,* 28 O. C. A., 577, at page 580.

In the present case the rights of the plaintiff and the fact of the nuisance and damage complained of having been established by the law action, it is said that in such event, injunction is a matter of course. 29 Cyc. 1230; 27 R. C. L., Article 142; *Village of Dwight* v. *Hayes,* 150 Illinois, 273; *Whalen* v. *The Union Bag & Paper Co.,* 208 New York, 1; and *Allman* v. *Town of Mt. Angle,* 57 Oregon, 547.

For these reasons, an injunction will be granted in the present case to restrain the defendant, the city of Cincinnati from continuing, in violation of law, to dump sewage into Muddy Creek to the damage of lower riparian owners. However, so that this order may work no unnecessary hardship upon the defendant or the citizens of Cincinnati, whose sewage is now drained through this sewer, a further hearing will be held to determine the time within which and the conditions upon which such injunction is to be made effective.

The motion for a new trial will be overruled. **Judgment may** be entered upon the verdict and the case continued for further hearing to determine the conditions of the injunction and furtthr equitable relief.