THE NEW YORK, PHILADELPHIA AND NORFOLK RAIL-
WAY COMPANY *vs.* JOHN L. BATES.

*Pleadings—Practice in Court of Appeals—Conflicting in-
structions to the Jury—Action against Railroad Company
for Services—Construction of Letter of Agency—Meaning
of the term " Settlement " therein—Principal and Agent—
Vouchers—Evidence.*

Where none of the prayers make any reference to the pleadings, and
no ruling was made by the Court below involving the admissibility
of testimony, no question as to the sufficiency of the pleadings is
open for review in the Court of Appeals.

It is a fatal error for the Court to allow the jury upon the same state
of facts to place two different and inconsistent interpretations upon
a written instrument which it was the province of the Court itself
to construe.

In an action of *assumpsit* for personal services against a Railroad
Company, it appeared that the plaintiff, by a letter to P. an ex-
president of the Company, in relation to his unpaid vouchers for
said services, which had been left by him with P. for settlement
prior to his resignation, authorized P. as follows : " I hereby authorize
you to make the best settlement you may be able to do for me."
HELD :

1st.   That the term " settlement " as used in said letter, included not
only the determination by P. of the amount due, but the collection
and receipt by him of the money coming to the plaintiff under such
settlement.

2nd.   That the failure of P. to pay over to the plaintiff the money
collected from the Company, under said authority, gave the plaintiff
no right of recovery against the Company, if the latter acted in
good faith in the matter of the settlement, and payment of the
money to P.

The defendant prayed the Court to instruct the jury that if they should
find that the unpaid vouchers were not signed or approved by P.
while he was president of the Company, and should further find,
that when the same were signed and approved P. had ceased to be

New York, Phila. and Norfolk R. R. Co. *vs.* Bates.

such president, then said vouchers were not evidence of any indebtedness from the defendant to the plaintiff. HELD:

That said prayer announced a sound legal proposition and should have been granted.

APPEAL from the Circuit Court for Worcester County.

The case is stated in the opinion of the Court.

*First Exception.*—At the trial the defendant offered the following prayer:

1. If the jury find from the evidence in the cause, that the vouchers mentioned in the plaintiff's bill of particulars were delivered to the witness, U. H. Painter, and being so in his hands, the plaintiff wrote and delivered to the said Painter the letter offered in evidence, in the following words and figures, to wit: "Pocomoke City, 2, 21, '84. Dear Sir:—In regard to the vouchers of mine sent to you for services as superintendent of construction during the year 1883, I hereby authorize you to make the best settlement you may be able to do for me. Yours respectfully, J. L. Bates;" and that afterwards, and before the institution of this suit, the said witness, in pursuance of the authority contained in the said letter, about the month of March or April, 1884, did make a settlement with the defendant of and concerning the said vouchers, for the services of the plaintiff therein mentioned, and delivered the said vouchers so offered in evidence, and that the defendant accepted the same, their verdict must be for the defendant.

The Court (HOLLAND, J.) rejected the said prayer. The defendant excepted.

*Second Exception.*—The defendant then offered the following prayers:

2. If from all the evidence in the cause the jury find that the plaintiff made out and sent to Uriah H. Painter, the then President of the N. Y., P. & N. R. R. Co., the

vouchers mentioned in the plaintiff's bill of particulars and offered in evidence, and that all the said vouchers remained and were in the hands of the said Uriah H. Painter on the 30th day of December, in the year 1883, and were unpaid except the first three, and that on said last mentioned day the plaintiff and said Painter had a conversation in the office of said Painter, in Washington City, respecting the said unpaid vouchers, in which conversation the said Painter told the plaintiff he had disposed of his, Painter's, interest in the said railroad, and that in the future he should have nothing further to do with the management of the same, but would say to him that he, said Painter, had vouchers and claims against the said company for money expended and paid by him, said Painter, on account of the construction of said railroad, which he intended to present to said company for payment, and get what he could, and that if the plaintiff thought fit he would also present the plaintiff's vouchers to the company with his own, and put them on the same footing with his own. That afterwards the plaintiff executed, and by William Painter delivered to the witness, U. H. Painter, his letter of February 21st, 1884, offered in evidence. That afterwards, and after the said witness, U. H. Painter, had ceased to be the president of said company, and before the institution of this suit, the said U. H. Painter, in pursuance of the authority contained in said letter, presented the plaintiff's said vouchers, with his own claims and vouchers, to the said company, the defendant in this suit, for settlement, and made a settlement of the same, and received a valuable consideration therefor from the said defendant, and in consideration thereof delivered the plaintiff's said vouchers as they appear in evidence, together with his own vouchers and claims, to the defendant, which the defendant in good faith received and accepted, and if they shall so find, the jury is instructed that such delivery of the said vouchers discharged the

plaintiff's claim mentioned in the pleadings in this cause, and their verdict should be for the defendant.

2. (As amended by the Court.) If from all the evidence in the cause the jury find that the plaintiff made out and sent to Uriah H. Painter, the then president of the N. Y., P. & N. R. R. Co., the vouchers mentioned in the plaintiff's bill of particulars and offered in evidence, and that all the said vouchers remained and were in the hands of the said Uriah H. Painter on the 30th day of December, in the year 1883, and were unpaid, except the first three, and that on said last mentioned day the plaintiff and said Painter had a conversation in the office of said Painter in Washington City, respecting the said unpaid vouchers, in which conversation the said Painter told the plaintiff he had disposed of his, Painter's, interest in the said railroad, and that he had nothing further to do with the same, but would say to him that he, said Painter, had vouchers and claims against the said company for money expended and paid by him, said Painter, on account of the construction of said railroad, which he wanted to get through, and that if the plaintiff thought fit, he would also put the plaintiff's vouchers to the company with his own on the same footing with his own, and that he would see Wm. Painter, the vice-president and see what could be done; to all which plaintiff assented ; that afterwards, the plaintiff executed, and by Genl. William Painter delivered to the witness, U. H. Painter, his letter of February 21st, 1884, offered in evidence; that afterwards and after the said witness, U. H. Painter, had ceased to be the president of said company, and before the institution of this suit, the said U. H. Painter, in pursuance of the authority contained in said letter, presented the plaintiff's said vouchers, with his own claims and vouchers, to the said company, the defendant in this suit, for settlement, and made a settlement of the same and received money from the said defendant, and in considera-

tion thereof delivered the plaintiff's said vouchers as they appear in evidence, together with his own vouchers and claims, to the defendant, which the defendant in good faith received and accepted, and if they shall so find, the jury is instructed that such delivery and payment of the said vouchers discharged the plaintiff's claim mentioned in the pleadings in this cause, and their verdict should be for the defendant; [unless they shall believe and so find from the evidence in the cause that it was the business custom of the defendant to have vouchers for its expenses sent to it receipted before allowance and payment, and the vouchers mentioned in the bill of particulars were so sent; that at the time of the writing of the letter of February 21, '84, to U. H. Painter, the plaintiff then considered his said vouchers were in possession of defendant, and that when the said vouchers were delivered to the defendant, by said Painter, the allowance of the same and the payment of the money mentioned in the evidence by defendant to said Painter, the defendant had notice that plaintiff's said vouchers came into the hands of said Painter, as its president, in the regular course of its business; if they shall so find, then in that case the jury are at liberty to consider the letter of February 21, '84, from plaintiff to said Painter, as authority to said Painter simply to procure an adjustment and allowance of the vouchers herein mentioned by the defendant.]

3. If from the evidence the jury shall find that the plaintiff delivered to Uriah H. Painter his vouchers mentioned in the bill of particulars, and offered in evidence, with the receipt of said plaintiff endorsed on or attached to each voucher in full of the same, and on the 30th of December, 1883, the said vouchers were in the possession of said U. H. Painter, with the consent and approval of said plaintiff, and were never withdrawn by said plaintiff, and the said U. H. Painter and the plaintiff, on or about the said last mentioned day, had a conversation relating to

the payment and settlement of said vouchers, in which the said Painter told him he, Painter, had sold his interest in the road, and would have nothing more to do with it, and that he, Painter, had some vouchers of his own, of a like nature, which he intended to present for settlement, and if the plaintiff desired it he would put the plaintiff's claims and vouchers on the same footing with his own ; to which the plaintiff expressed his assent, and afterwards, in writing, authorized said Painter to make the best settlement of his, plaintiff's vouchers, he, Painter, could, and afterwards the said Painter settled the vouchers in the bill of particulars mentioned, with the defendant, on the same footing with his own, and for a valuable consideration delivered the said vouchers of his own and the plaintiff's vouchers to the defendant, which accepted the same in good faith for a consideration agreed upon, and in like good faith paid said consideration—five thousand dollars—in March, 1884, and the remainder in April, 1884, and before this suit was brought ; and if the jury so find, their verdict must be for the defendant.

4. If from the evidence the jury shall find the vouchers of plaintiff for salary as superintendent of construction for February, March, April, May, June, July, August, September and October, were sent to U. H. Painter, the President of the New York, Philadelphia and Norfolk Railroad Company, during the year 1883, and for November and December, were delivered to said Painter, president as aforesaid, on the 30th day of December, in the year 1883, and on said last mentioned day the said Painter told the plaintiff he, Painter, had disposed of his interest in the railroad, and had nothing more to do with it ; that he, Painter, had some vouchers of his own, and if the plaintiff desired it, he, Painter, would put plaintiff's vouchers on the same footing with his own, to which the plaintiff assented, and at the same time the said Painter showed plaintiff his, plaintiff's vouchers, and said that

he, Painter, had not up to that time approved them, and they had never been adjusted; that he would see the General about them, and see what could be done, to which the plaintiff assented; which said vouchers of plaintiff remained in the custody of said U. H. Painter, and were never withdrawn by the plaintiff. And that it was the custom to send such vouchers receipted, and if approved, the money was usually sent back. And shall further find, that on or about the 21st day of January, 1884, the said U. H. Painter ceased to be president of the said company, the defendant, and in the latter part of February, 1884, the said U. H. Painter received through the hands of General William Painter, the letter from the plaintiff, dated on or about the 21st day of February, 1884, and offered in evidence, authorizing the said U. H. Painter to make the best settlement he, Painter, might be able to do for the plaintiff, and at the time and before said letter was received by said U. H. Painter, the said U. H. Painter had vouchers of his own for expenses incurred in constructing said railroad. And shall further find, that said U. H. Painter, after the receipt of said letter, did settle the said vouchers of the plaintiff, and those of his own, with Mr. Cassatt, and in said settlement did put the said vouchers of the plaintiff on the same footing with his own, and for a valuable consideration delivered said vouchers, as they appear in evidence, to the defendant, the said railroad company, of which valuable consideration was paid to said U. H. Painter for said vouchers of plaintiff and those of his own, five thousand dollars, in March, 1884, and the remainder in April, 1884, and said defendant, in good faith, accepted said vouchers and the settlement made, then their verdict must be for the defendant.

5. That if the jury shall find that the said vouchers for the months from February to December, 1883, (both inclusive,) offered in evidence by the plaintiff, were not signed or approved by U. H. Painter, while said Painter

was president of the defendant; and shall further find, that when the same were signed and approved, the said Painter had ceased to be president as aforesaid, then the said vouchers are not evidence of any indebtedness from the defendant to the plaintiff, and the jury are not at liberty to so consider them.

6. That if the jury shall find the facts set out in the defendant's second prayer, as amended and granted by the Court, then they are at liberty to consider the letter of 21 Feby., 1884, from plaintiff to U. H. Painter, as authority to said Painter to adjust or to receive the payment of the vouchers above referred to.

The Court rejected the defendant's second prayer, as offered, but modified it, and as modified granted the same, as also the sixth prayer, but rejected the third, fourth, and fifth prayers.

The defendant excepted, and the verdict and judgment being against it, this appeal was taken.

The cause was argued before ALVEY, C. J., YELLOTT, MILLER, ROBINSON, IRVING, BRYAN, and McSHERRY, J.

*John W. Crisfield*, for the appellant.

*John H. Handy*, for the appellee.

MILLER, J., delivered the opinion of the Court.

This was an action of *assumpsit* brought by the appellee against the appellant, to recover for thirteen and one-half months' services from the 13th of November, 1882, to the 30th of December, 1883, as superintendent of the construction of part of the defendant's road, at $75 per month. The amount claimed to be due by the bill of particulars, after deducting credits, was $773.21, and at the trial the jury gave a verdict in favor of the plaintiff for that sum.

The exceptions taken relate entirely to the rulings of the Court upon certain prayers offered by the defendant,

(none appearing to have been offered by the plaintiff,) and these rulings alone are before us for review.

There was some discussion at bar as to the pleadings, but none of the prayers make any reference to the pleadings, nor was there any ruling made by the Court below involving the admissibility of testimony.   No question therefore as to the sufficiency of the pleadings is open for review in this Court. *Leopard vs. Ches. & Ohio Canal Co.,* 1 *Gill,* 222; *Dorsey vs. Dashiell,* 1 *Md.,* 207.

In our opinion the learned Judge before whom this case was tried, fell into error in his action in granting the defendant's second prayer as modified by him, and in granting, at the same time, the defendant's sixth prayer. By the first the jury were instructed that if they found the facts stated in the prayer and in the modification thereof made by the Court, they were "at liberty to consider the *letter* of the 21st of February, 1884, from the plaintiff to the witness Painter, as authority to said Painter *simply* to procure an adjustment and allowance of the *vouchers* therein mentioned by the defendant;" and by the second they were instructed that upon finding the *same facts* they were at liberty to consider this letter "as authority to said Painter to adjust *or to receive payment* of the vouchers above referred to."   To allow the jury upon the *same state of facts* to place two different and inconsistent interpretations upon a written instrument, which it was the province of the Court itself to construe, was certainly a fatal error in the trial of the case.   The jury ought to have had a plain and definite instruction from the Court as to the extent of the authority which the plaintiff gave to Painter by this letter, for in our judgment the case in a great measure depends upon its true construction in this respect, in view of the facts disclosed by the record.

What then is the construction and effect of this letter, in view of the testimony found in the record ?   The two main witnesses in the case were the plaintiff and Uriah H.

Painter.  On some points their testimony is conflicting, but there seems to be no dispute as to the following facts: Painter was president of the defendant company during the period covered by the plaintiff's claim, and so continued up to the 21st of January, 1884, but on that day he ceased to be president, and was succeeded by Mr. William L. Scott.  The plaintiff sent and delivered the monthly vouchers for his salary to Painter in Washington, and at the latter's request.  These vouchers when thus sent and delivered were *receipted* by the plaintiff, in accordance with the custom and requirement of the company in regard to all vouchers.  Those of them covering the amount sued for were never paid by the company, and remained in Painter's possession up to the *date* of the letter in question.  Thus far there appears no conflict of testimony.  Painter then testifies that on the 30th of December, 1883, he had a conversation with the plaintiff about his vouchers in his (witness') office in Washington ; that he then told the plaintiff that he (witness) had disposed of his interest in the railroad and had nothing more to do with it; that he, witness, had some vouchers of his own, and if the plaintiff desired it he would put plaintiff's vouchers on the same footing with his own, and plaintiff said " that was all right;" that he took out the plaintiff's vouchers and said that he had not up to that time approved them, and told him they had never been adjusted, and that he would see the General (General William Painter, the brother of the witness, and the vice-president of the company) about them, and see what could be done, and plaintiff said " all right," and he and witness went to Philadelphia the next day ; that in the latter part of February, 1884, General Painter brought him the letter in question dated the 21st of February, 1884. This letter is conceded to have been written and signed by the plaintiff and is as follows :

"POCOMOKE CITY, 2, 21, '84.

"U. H. PAINTER, ESQ.

Dear Sir:—In regard to the vouchers of mine, sent to you for service as Supt. of construction during the year 1883, *I hereby authorize you to make the best settlement you may be able to do for me.*

"Yours respectfully,

"J. L. BATES."

Reading this letter in the light of the facts above stated, or indeed in the light of any testimony on the subject to be found in this record, we are clearly of opinion the plaintiff thereby authorized and empowered Painter, who was then out of office and no longer had authority to act for the company, to present these unpaid vouchers or claims and to obtain "the best settlement of them" he could; and that the term "settlement" as here used, includes not only the determination of the amount due, if there was any dispute on that subject, but the collection and receipt of the *money* coming to the plaintiff under such settlement. To this extent, as it seems to us, the authority plainly goes, and we are unable to place a more restricted construction on the language used. Merely to have the vouchers "adjusted and allowed," without collecting and receiving the money would not, in our judgment, gratify the broad terms of the letter, nor accomplish the object the plaintiff had in view in writing it. He lived in a distant locality, and what he wanted was to get the money he claimed to be due to him on these vouchers; and thinking that Painter, who had similar unpaid claims of his own, would be the best person he could employ for that purpose, he made him his agent, to obtain what he could in payment therefor.

Such being the extent of his authority what did Painter do under it? He testifies that in pursuance of this letter he settled the vouchers mentioned in the bill of particulars with the company; that he made the settle-

ment with Mr. Cassatt, who was the agent of John Keller, the contractor for the construction of the road ; that in the settlement he put the plaintiff's vouchers on the same footing with his own, and they were all settled for and delivered to the company at the same time ; that the company accepted the vouchers and the settlement, and in the settlement for all these vouchers, including those of the plaintiff as well as his own, the sum of $5000 was paid to him in March, 1884, and the remainder in April, 1884.

It is true that he no where says that he ever paid any of this money over to the plaintiff, and from the fact that this suit is brought, we assume he did not. But if the company acted in *good faith* in the matter of the settlement and payment of the money to Painter, there is no principle of law or demand of justice that requires them to pay it over again to the plaintiff. He was the plaintiff's agent to collect and receive the money, and if he has defrauded his principal by not paying it over, the remedy of the latter is against him and not against a third party dealing with him in good faith as such agent.

The defendant's *fourth* prayer meets our views of the case as above expressed, and should have been granted. Most of the hypothesis of facts set out in this prayer depends upon the testimony of Painter, but the prayer leaves it to the jury to find whether they were true or not. The credibility of the witness was, of course, entirely for the jury to pass upon. In the defendant's first, second and third prayers there are some defects which justified their rejection. The first fails to leave it to the jury to find that the company acted in good faith, and the second and third do not, in plain terms, leave it to them to find that Painter had ceased to be president when the letter was written.

We are also of opinion that the defendant's *fifth* prayer announces a sound legal proposition and should have been

granted. If the jury found from the evidence, as the prayer puts it, that these unpaid vouchers were not signed and approved by Painter until after he had ceased to be president, then it seems to us plain, in the absence of proof that any other official of the company had authority to sign and approve, that these vouchers were not, *of themselves, evidence* of any indebtedness from the company to the plaintiff, and the jury were not at liberty so to consider them. After he had ceased to be president he could do no act, in that capacity, to bind the company.

*Judgment reversed, and*
*new trial awarded.*