## COMMERCIAL REALTY AND CONSTRUCTION COMPANY *vs.* WM. C. DORSEY.

*Prayer Not Referring to the Pleading—Implied Warranty of Fitness in Sales—Contract Cancelled by Buyer After Part Performance—Recoupment in Action to Recover Price of Prior Deliveries.*

When a granted prayer does not refer to the pleadings, its correctness must be determined entirely by a consideration of the evidence.

When a buyer orders articles not manufactured by the seller, and he has an opportunity to inspect the same before using them, there is no implied warranty of their quality. And if he returns to the seller some of the articles delivered because of defects, he is not entitled, in an action against him, to recover the price of those not returned, to recoup any damages arising from the return of the defective articles.

A contract for the purchase of lumber of specified kinds at designated prices provided that in case the seller should fail to supply any of the material within three days after a request, thereupon the agreement should become void and the buyer liable only for the price of lumber delivered down to and including the day of the stoppage of deliveries. In an action to recover the price of lumber delivered to the defendant before his cancellation of the contract under this clause and also the price of certain lumber delivered to and accepted by the defendant thereafter, *held,* that the defendant is not entitled to recoup damages arising from delay in the delivery of lumber before cancellation of the contract.

*Held,* further, that a prayer offered by the defendant is erroneous which instructs the jury that, if they find the contract was cancelled, then the plaintiff is not entitled to recover for any lumber not delivered down to the date of the cancella-

tion. This prayer submits to the jury to find whether the contract was duly cancelled, which is a question of law, and also it denies the right of the plaintiff to recover for the lumber supplied thereafter and accepted by the defendant.

*Decided November 30th, 1910.*

Appeal from the Superior Court of Baltimore City (SHARP, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ.

*Francis E. Pegram* and *John L. Sanford,* for the appellant.

*Charles Lee Merriken* and *Wm. S. Bansemer* (with whom was *Geo. A. Solter* on the brief), for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

The appeal in this case was taken from a judgment of the Superior Court of Baltimore City against the appellant company in a suit on a contract for the supply of building materials.

The company, on the eve of the erection of a row of small buildings in Baltimore City, entered into a written contract with the appellee William C. Dorsey on December 9th, 1908, to supply it with the requisite quantity of certain kinds of lumber and mill work, at specified prices, for the buildings. The negotiations were made and the contract was signed on behalf of the company by Abel Rosenthal, its President, and its corporate seal was affixed thereto. It was also signed, but not sealed, by Dorsey.

The contract provides among other things that, upon a failure at any time of Dorsey to supply any of the materials

called for by it, within three days after a request therefor, the company shall have the right to stop any further deliveries and thereupon "this agreement and every clause herein shall be and become absolutely null and void, the said party of the second part (the company) being liable only for the payment to the said party of the first part for such amount of money as may be due him for all lumber and mill work delivered hereunder down to and including the day of the stoppage of said deliveries."

On January 27th, 1909, after certain deliveries of materials had been made, the company notified Dorsey that it annulled the contract in accordance with its own terms for his failure to comply with demands for the further delivery of materials.

On November 12th, 1909, Dorsey instituted the present suit in covenant on the contract against the company filing with the declaration a tabulated statement of his claim which, as amended, charged the defendant with deliveries of material, prior to the receipt of the notice terminating the contract, amounting, at the contract prices, to $693.45, and also with materials thereafter furnished amounting to $29.60, a total of $723.05, and crediting it with cash and the value at contract prices of materials returned by the company aggregating $318.56, thus leaving a balance due of $404.49. To this declaration the defendant pleaded *"nil debet"* and *"non assumpsit,"* and, after issue joined short, the case was tried before a jury and a verdict rendered for the plaintiff for $433.47. From the judgment entered on that verdict the present appeal was taken.

The record contains but one bill of exceptions and that relates to the action of the Court below on the prayers.

As there was no demurrer to any of the pleadings nor any special reference to the pleadings in the prayers which form the basis of the bill of exceptions, the correctness of those prayers must, under the settled practice in this State, be determined entirely by a consideration of the evidence. *Poe's*

*Practice,* sec. 302; *N. Y. P. & N. Ry. Co.* v. *Bates,* 68 Md. 192; *Balto. Bldg. Assn.* v. *Grant,* 41 Md. 569; *Leopard* v. *Canal Co.,* 1 Gill, 222; *Dorsey* v. *Dashiell,* 1 Md. 207.

The execution of the contract and the fact of the delivery of the goods charged for as having been delivered prior to January 27th, 1909, in the statement of claim filed with the *narr.* were conceded; as was also the fact that the prices charged therefor were in accord with those mentioned in the contract, but the liability of the company was denied on the grounds stated in the prayers hereinafter mentioned.

There is evidence in the record on behalf of the plaintiff tending to show that Rosenthal, when he looked at the lumber in Dorsey's yard, for the purpose of purchasing material to be used in the erection of the houses, informed Dorsey that the company wanted cheap lumber and that he was then shown by Dorsey the identical lumber which was afterwards delivered under the contract, and that he agreed to buy it and that the contract prices for it were made low because of its low quality. There was also evidence tending to show that the sash charged for in the statement as of March 13th, 1909, consisted of special sizes of sash which had been made in December, 1908, on Mr. Rosenthal's order for these buildings and which Dorsey had offered to deliver to him and he had refused to receive and that they were still held subject to the order of the company by the plaintiff. The plaintiff testified in his own behalf that he had been slow in making deliveries under the contract because the company was not making its payments according to the agreement.

The company introduced evidence tending to contradict the facts thus testified to for the plaintiff and to further prove that the joists supplied by the plaintiff were put in place by it on the buildings when received, but that many of them were subsequently condemned by the building inspector of Baltimore City and had to be removed and were returned to the plaintiff. It was conceded that the plaintiff had given credit for these returned joists in the statement of his claim

but the company offered evidence tending to show that it had been put to an expense of $75 for labor in removing the joists from the buildings and substituting new ones in their place and had suffered further loss from delay caused thereby.

At the close of the evidence the plaintiff offered one prayer which was granted. The defendant offered three prayers of which the first was granted and the other two were rejected.

The plaintiff's prayer asked the Court to instruct the jury:

(1) That under the true construction of the contract in writing between the plaintiff and defendant of December 9th, 1908, offered in evidence, the defendant had the right to cancel the said contract at any time the plaintiff should fail to make deliveries within three days from the date of demand made by Israel Silberstein, superintendent.

(2) That the letter of January 27th, 1909, from the defendant to the plaintiff, offered in evidence (if the jury shall find that said letter was received by the plaintiff) constituted a cancellation of said contract by the defendant.

(3) That upon the cancellation of said contract, the defendant became liable to the plaintiff for the payment to him, the plaintiff, of such amount of money as the jury may find was due for all lumber and mill work delivered under said contract, down to and including the date of the stoppage of said deliveries.

(4) That the defendant is not entitled to recoup as against the claims of the plaintiff, the item of $75.00 mentioned in evidence, nor any other items of offset mentioned by the witness, Rosenthal.

The defendant's rejected prayers were as follows:

(2) The defendant prays the Court to instruct the jury that if they shall find from the evidence, the plaintiff and defendant entered into a contract whereby the plaintiff agreed to deliver to the defendant certain mill work and certain specified kinds of lumber, and if the jury shall further find that the plaintiff failed to deliver to the defendant the lumber specified in said contract, and delivered lumber of a dif-

ferent kind, if they shall so find, then the plaintiff is not entitled to recover, and the verdict must be for the defendant.

(3) The defendant prays the Court to instruct the jury that, if they shall find from the evidence, the plaintiff and defendant entered into a contract whereby the plaintiff was to deliver to the defendant certain specified kinds of mill work and lumber; and if they shall further find that said contract contained a clause whereby the defendant could cancel said contract, and said contract was duly cancelled, if they shall so find, then the plaintiff is not entitled to recover for any mill work or lumber not delivered to the defendant down to and including the date of the cancellation of said contract.

We find no error in the Court's rulings on these prayers. It is plain from what we have already said that there was evidence in the case adequate to support the three first paragraphs of the plaintiff's prayer.

The fourth paragraph denied the defendant's right to recoup either the item of $75 of alleged loss from the defective quality of certain joists supplied by the plaintiff, or the alleged losses, testified to by the witness Rosenthal, resulting from the delay of the plaintiff in making deliveries of the material bought from him.

The right of a defendant to recoup losses suffered by him through the fault of the plaintiff in connection with the contract or transaction forming the subject matter of the suit has received full recognition at the hands of this Court in all cases to which it is properly applicable. It has been more frequently allowed in actions on contracts for work and labor but it has also been upheld in suits for goods sold and delivered especially where the damages sought to be recouped arose from a breath of warranty, express or implied. The law upon this subject received consideration by us in *Queen City Glass Co.* v. *Clay Pot Co.,* 97 Md. 429, where we, quoting with approval from the cases of *Jones* v. *Just,* L. R. 3 Q.

B. 197, and *Rice* v. *Forsyth,* 41 Md. 403, and relying upon other cases there cited said:

"Where a manufacturer contracts to supply an article which he manufactures to be applied to a particular purpose so that the buyer necessarily trusts to the judgment or skill of the manufacturer, there is in that case an implied term or warranty, that it shall be reasonably fit for the purpose to which it is to be applied. In such a case the buyer trusts to the manufacturer or dealer and relies upon his judgment and not upon his own."

We have held with equal clearness that where the seller is not the manufacturer of the article sold and the buyer has an opportunity of examining it there is no implied warranty, in the absence of fraud, that it shall be fit for the purpose for which it was bought. In such cases, if there be no express warranty, the doctrine of *caveat emptor* applies and the buyer, not having seen fit to exact a warranty, takes upon himself the risk as to quality. *Horner* v. *Parkhurst,* 71 Md. 116; *Farren* v. *Dameron,* 99 Md. 337; *Rice* v. *Forsyth,* 41 Md. 389; *Raisin* v. *Conley,* 58 Md. 65.

In the case now before us it is not contended that the contract sued on contained any express warranty, and, as the joists, alleged to have been defective, were merely commercial lumber and not goods manufactured by the seller, and the buyer had ample opportunity to inspect them after they were delivered before using them, there was no implied warranty but he must be regarded as having ossumed the risk of their quality. Furthermore it is not denied that the buyer returned the defective joists to the seller and a deduction equal to their contract price was made from the amount with which it was charged and no attempt is now being made to recover the price of those joists. Under these circumstances it is manifest that the defendant was not entitled to recoup the item of $75 referred to in the prayer.

No defects in the quality of the other items of the material delivered under the contract, were set up by the defendant,

but the witness Rosenthal testified in very general terms that the completion of the buildings was delayed for he "guessed" about two months by the plaintiff's tardiness in making deliveries of materials under the contract, which delay "so far as he knew" cost the defendant $160 extra mortgage interest and $18 a week wages for two men who had to be kept in its employment during that time.

No express warranty appears in the contract as to promptness of delivery of the articles sold nor is there any provision as to the time of delivery other than that deliveries are to be made "at the time and in the quantities that the superintendent Israel Silberstein may direct." As a protection to the buyer against tardiness in deliveries the contract contains the provision, already referred to, authorizing the superintendent to rescind and destroy the entire contract at any time upon a failure of the seller to deliver, within three days after demand, any of the material called for by the contract.

We think the defendant was not entitled to recoup the damages claimed for tardy deliveries of material by the plaintiff because it had by the express terms of the contract the means of protecting itself, by rescinding it at any time, immediately upon a failure of the plaintiff to make any delivery within the three days allowed him for that purpose and it was not compelled to submit to any further delay. The alleged losses testified to, other than those from defects in the quality of joists already disposed of by us, were strictly such as arose from delay.

The defendant lost nothing in any event by the denial of its right of recoupment, in granting the plaintiff's first prayer, because the Court, in granting the defendant's first prayer, went to the length of instructing the jury that if they found the making of the contract sued on and further found that the plaintiff failed to perform it "agreeably to the terms thereof" he was not entitled to recover at all and "their verdict must be in favor of the defendant." The defendant, having elected to ask no instruction from the Court as to its

right to recoup but to ask the much broader instruction in its favor contained in its first prayer and having obtained that instruction, had the case sent to the jury upon terms of which it has no right to complain.

The defendant was not entitled to the instruction contained in its second prayer, which totally denied the plaintiff's right of recovery, because the uncontradicted evidence shows that it retained and used all of the lumber delivered to it by the plaintiff except the portion returned by it to the plaintiff for which portion it received due credit in the statement of the plaintiff's claim.

The defendant's third prayer was bad because it submitted to the jury the question whether the "contract was duly cancelled" which is an issue of law, and further because, in the absence of any reference to the pleadings in the prayer, the plaintiff's right to recover for the window sash charged for, which had not been delivered when the notice to stop deliveries under the contract was given by the defendant, must be determined solely from the evidence. There was evidence tending to show that those sash had been made in special sizes prior to that date upon the defendant's order and a delivery of them had been tendered to it.

For the reasons mentioned by us we will affirm the judgment appealed from.

*Judgment affirmed, with costs.*