BIBERMAN ET AL. *v.* FUNKHOUSER ET AL.

[No. 146, October Term, 1947.]

*Decided April 23, 1948.*

The cause was argued before MARBURY, C. J. DELA-
PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*David W. Byron* and *Irvine H. Rutledge,* with whom
were *Lane, Bushong & Byron* on the brief, for the
appellants.

*Omer T. Kaylor* for the appellees.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by Jacob A. Biberman and Mildred
K. Biberman, his wife, defendants below, appellants here,
from a decree of the Circuit Court for Washington
County, granting a mandatory injunction enjoining the
appellants from permitting the water and dirt from their
property to drain over and upon the property of the
appellees here, Richard N. Funkhouser and Janet K.
Funkhouser, his wife, complainants below.

The Funkhousers are the owners of a single lot, (the
Funkhouser lot), located at the corner formed by the
streets known as The Terrace and Country Club Road
in Hagerstown. The property now owned by the appel-
lants, Bibermans, (the Biberman lots), is located immedi-
ately south and southwest of the Funkhouser property

426

and consists of four adjacent lots on the east side of The Terrace. A contour map made in 1909 and 1911 before any streets in this vicinity were laid out, and the evidence given in this case, proves that the elevation of the Biberman lots and especially the southeast and east portion were originally higher than the Funkhouser lot. Before any grading was done on either property the bulk of the water from the Biberman lots naturally flowed in a northerly and westerly direction, part of it flowing northerly over the Funkhouser lot, and part flowing westerly over what is now The Terrace, into a ravine on the west side of The Terrace as now laid out. Accordingly to appellees' engineer, before any grading was done on either property, no water falling on the Funkhouser property flowed on the Biberman property at any point. Therefore, as between the Biberman property and the Funkhouser property, the Biberman property is the dominant and upper estate and the Funkhouser property is the lower estate. The Mayor and Council of Hagerstown, after the contour map was made, established the grade for the streets in this locality. The grade of The Terrace was made higher than the whole of the front part of the Funkhouser lot and higher than a large part of the front of the Biberman lots. In 1939 a predecessor in title erected the house on the Funkhouser lot. Several years later a dwelling was erected on one of the Biberman lots, now the Biberman dwelling.

On account of the raising of The Terrace, the Funkhouser lot was filled in at the front of the house to the grade of The Terrace. The dirt from the cellar was used to make this fill and about eight hundred loads of earth were brought from other property and used for the fill in the front of the Funkhouser lot, which, before the grading, was about five feet below the curb of The Terrace. Before this fill there was a flow of water from the Biberman lots to the Funkhouser lot. As a result of this fill the front of the Funkhouser lot was raised above the Biberman lots. The raising of the front of the

Funkhouser lot caused water to accumulate at the northwest corner of the Biberman lots. This low spot in the Biberman lots, caused by raising the Funkhouser lot and creating a terrace, developed into a sink hole where thickets and trees grew.

The Bibermans later decided to grade off and level their entire property consisting of the four lots aforesaid. They not only filled in the front of the lots to conform to the grade of the Terrace but leveled off their entire property taking large quantities of earth from the southeast corner, which was the highest part of their property, and moving it along the entire length of the Funkhouser lot, thereby causing a bank to be erected along the Funkhouser property as much as three feet in height in some places. Before the Biberman property was graded the water flowed naturally from the high ground in several directions, thereby more or less scattering the drainage. After the Biberman property was graded and put at its present level, part of the water from the Biberman lots flowed in a northerly and northwesterly direction toward the Funkhouser lot and part flowed in a westerly direction toward The Terrace.

Before the Bibermans did this grading, there apparently was no trouble about water concentrating in the Funkhouser cellar. About three months before the Biberman lots were graded the Funkhousers built an outside entrance to their cellar by digging about seven feet below the surface of the ground. The dirt taken from this excavation was deposited by the Funkhousers in the low northwest corner of the Biberman property, so that whoever bought that property could use that dirt to fill in that low spot. Although there was considerable rain during that period, the cellar was not flooded until the Biberman lots were graded. After the grading of the Biberman lots, the Funkhouser cellar at times was filled with water and mud to the depth of over a foot. This water and mud came through the outside cellar entrance which the Funkhousers had constructed about three

months before. There was no cover over this entrance. However, it was surrounded by a curb about two inches high and a drain was placed at the bottom of the cellar steps.

From pictures offered in evidence, water is concentrated along the Funkhouser property and cuts ditches or gullies in the bank caused by the grading. After the grass and shrubbery grew on the Biberman lots, the ditches are not as deep and the amount of wated flowing on the Funkhouser lot has decreased. However, the Funkhouser cellar has been flooded several times, the last time being on August 20, 1947, two weeks prior to the hearing in this case, when at least six inches of water concentrated there. The chancellor in this case found that the extensive grading by the Bibermans changed the natural flow of water from their land and much of it, which formerly drained to The Terrace and to the alley in the rear of the property, as well as across the southwest corner and the rear of the Funkhouser lot, was so concentrated opposite the Funkhouser dwelling house that frequent flooding of the cellar is the result. The chancellor was of opinion from the testimony offered that an open drain along the property line carrying the excess water to The Terrace would be sufficient to divert the water from the Funkhouser property. From the argument in this Court, it appears that the cost of the construction of such an open drain would be small.

Maryland has adopted the rule of the civil law that the owner of land is entitled to have surface water flow naturally over the land of the lower land owner, and the lower owner cannot prevent escape of water from the higher land onto his land. This rule was adopted by this Court in the case of *Philadelphia, Wilmington & Baltimore R. R. Co. v. Davis*, 68 Md. 281, 11 A. 822, 6 Am. St. Rep. 440. In that case, where this Court discussed decisions in other states, it was said, at page 289 of 68 Md., at page 824 of 11 A.: "The prevailing doctrine in this country seems to be that the owner of the upper

land has a right to the uninterrupted flowage of the water caused by falling rain and melting snow, and that the proprietor of the lower land, to which the water naturally descends, has no right to make embankments whereby the current may be arrested and accumulated on the property of his neighbor. This is the rule of the civil law, apparently founded on the principles of justice, and said to be 'received with constantly increasing favor in the United States.' " *Tiffany on Real Property,* 3rd Ed., Vol. 3, Sec. 743; *Baltimore & S. P. R. Co. v. Hackett,* 87 Md. 224, 39 A. 510; *City Dairy Co. v. Scott,* 129 Md. 548, 100 A. 295; *Whitman v. Forney,* 181 Md. 652, 31 A. 2d 630.

This rule of the civil law is subject to the qualification that the upper owner has no right to increase materially the quantity or volume of water discharged on the lower land owner. The rule is also subject to the qualification that the upper owner has no right to discharge water into an artificial channel or in a different manner than the usual and ordinary natural course of drainage, or put upon the lower land water which would not have flowed there if the natural drainage conditions had not been disturbed. *Neubauer v. Overlea Realty Co.,* 142 Md. 87, 99, 120 A. 69. If water is unlawfully forced on the lower owner he is entitled to fill his property to protect it from the unlawful flow of the water. *City Dairy Co. v. Scott, supra.*

From the testimony in this case it is evident that before grading was done on either property, the bulk of the water flowed naturally from the Biberman lots partly northerly over the Funkhouser lot and partly westerly over what is now The Terrace. As a result of the grading of the Biberman lots, possibly more water flows over the Funkhouser lot than before any grading was done. This increase over the natural flow, however, appears to be more or less trivial. From the kaleidoscopic pictures offered in evidence, ditches cut by the water are shown distributed along the terrace between the two properties.

In the instant case, although it seems that there is some increase in the amount of water which would naturally flow on the Funkhouser property, and although the distribution of the water on the Funkhouser property may be concentrated to a greater extent than the natural flow, the differences in the amount of water and the change of direction in the flow appear to be trivial. The appellants have constructed a hedge along the boundary of their property. To put in an open drain apparently would necessitate the removal of that hedge. The testimony shows that the Funkhouser dwelling is located eight to ten feet from the property line. This should be ample room for the construction on the Funkhouser property of the open drain suggested by the chancellor. We are also informed by appellees' counsel that the cost of constructing this drain would be small. Therefore, we believe it would be equitable for the appellees to construct the open drain along the boundary line on their property, so as to carry the water through an opening in the curb to The Terrace. Appellants should make every effort to close the ditches through which water runs from their property on the Funkhouser land and to diminish as much as possible the flow.

As both sides apparently were unwilling to adjust this matter and have stood stubbornly on their supposed rights, and appellees will be required to construct the open drain on their property, it seems fair that each side should pay its own costs. *Whitman v. Forney, supra,* 181 Md. 652, at page 661, 31 A. 2d 630.

> *Decree reversed, each side to pay its own costs, and bill of complaint dismissed.*