KENNEDY-CHAMBERLIN DEVELOPMENT COMPANY ET AL. *v.* SNURE ET AL.

[No. 104, October Term, 1956.]

*Decided February 15, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON and HAMMOND, JJ., and MICHAELSON, J., Associate Judge of the Fifth Judicial Circuit, specially assigned.

*John Lewis Kelly,* for appellants.

*C. Edward Nicholson, Jr., Assistant County Attorney for Montgomery County,* with whom were *Charles M. Irelan, County Attorney,* and *Bradshaw, Shearin, Redding & Thomas* on the brief, for appellees.

MICHAELSON, J., by special assignment, delivered the opinion of the Court.

The appellants, Kennedy-Chamberlin Development Company and Kenwood Golf and Country Club, plaintiffs below, filed a bill of complaint in the Circuit Court for Montgomery County to enjoin the appellees, the County Council of Montgomery County, the Director of the Department of Public Works of this County, and Lisbon Construction Company, contractors, from interfering with the natural drainage of surface water from a parcel of land containing 42.6 acres, situated north of Goldsboro Road, to the lower land of the appellants south of this road, until such time as the appellees agree to construct the proposed drainage system in such a way as not to damage the appellants' properties. The Circuit Court for Montgomery County denied the relief prayed, and dismissed the bill of complaint. This appeal is from that Court's action.

The bill of complaint does not allege that the appellants have already suffered any damage, but it alleges that the proposed construction of two new roads, Radnor Road and Pembroke Road, through the aforementioned tract of land north of Goldsboro Road, and the installation of the proposed drainage system will interfere with the natural drainage of the area and

will concentrate and dump an increased volume of water and debris upon their property, thereby causing flooding and erosion, and irreparable damage to their property. These allegations relate to prospective damage at some indefinite times.

Kennedy-Chamberlin Development Company is the owner of a parcel of unsubdivided land containing 45,317 square feet, lying south of Goldsboro Road and adjoining other subdivided property owned by this Company to the east and southeast. Kenwood Golf and Country Club owns a tract of land, part of which is to the west of the above-mentioned 42.6 acre tract north of Goldsboro Road, and the remainder lies below and to the south of Goldsboro Road and extends in a south, southwesterly direction west of, and adjacent to, the property of the Kennedy-Chamberlin Development Company.

The parcel of land north of Goldsboro Road, through which the appellees propose to construct the two new roads, is heavily wooded land, covered with trees and underbrush. The natural drainage of the entire parcel is in different directions, depending upon the nature of the terrain, but that part of this tract with which these proceedings are concerned is a natural watershed, and the natural drainage is in a south, southwesterly direction. There is a stream bed or small stream running in a southerly direction through this area, and surface water drains into it and into intermittent streamlets, and eventually flows on through an existing 24 inch draining pipe under Goldsboro Road, and emerges on the south side of this road and continues on to the Kennedy-Chamberlin Development Company's property as a stream in a bed or ditch, approximately three or three and a half feet wide at the bottom and about two feet deep in some places. The banks of the ditch are approximately a foot and a half to two feet high above the stream level. About two hundred feet farther to the west of the 24 inch pipe there is also an 18 inch drainage pipe under Goldsboro Road, and it also carries the drainage of surface water into the same stream.

As the stream flows on the property of the Kennedy-Chamberlin Development Company, it meanders through the property and then flows on and winds through the property of the Kenwood Golf and Country Club. In its meandering

through the appellants' properties, the stream enters and passes through a 12 inch pipe under the golf practice range of the golf course for a short distance, and then empties on the other side and continues on its way to other property. At times the quantity of water in the stream is very small.

The Department of Public Works of Montgomery County, Maryland, has planned to construct two new roads, Radnor and Pembroke Roads, through a part of the land north of Goldsboro Road, and to provide drainage of these new roads by means of storm sewers placed at intervals on both of these roads, connected by pipe inlets buried in the ground. These pipes will carry the natural drainage of the area north of Goldsboro Road into the small stream which passes under Goldsboro Road and flows on across the appellants' land. The drainage plans also require the replacement of the 24 inch pipe by a 36 inch pipe to take care of any increased flow of water under Goldsboro Road at this point.

The appellants offered in evidence testimony of several witnesses to support their contentions in this case.

Mr. Harold G. Free, who is Vice-President of the Kennedy-Chamberlin Development Company and also Vice-President and Treasurer of the Kenwood Golf and Country Club, and who is also a registered professional engineer and land surveyor, testified for the plaintiffs and gave a description of the topography of the areas involved in these proceedings, and he expressed it as his opinion that the drainage construction, when completed, would increase the volume and velocity of the flow of water, and "it is quite probable that in the rush of additional water that there would be considerable change in the present course of the stream." He also stated that it was his opinion that "there would be very definitely changes in the position of the stream itself and erosion of the land as the result of that, and considerable washing through the area now used as a driving range." He also testified that it is quite likely that debris carried by the water would be deposited in part on the practice driving range of the golf course.

The evidence shows that the drainage plans have been approved by the Washington Suburban Sanitary Commission, an administrative agency which has jurisdiction over plans for

storm drainage systems in Montgomery County. On cross-examination, Mr. Free admitted that he was familiar with these plans and with the fact that they had been approved by this Commission. He also admitted that he accepted the Sanitary Commission requirements "with regard to the design of storm systems." He further testified that the property of the Kennedy-Chamberlin Development Company had been accepting a flow of surface water from the land north of Goldsboro Road for many years, and, to his knowledge, since 1927.

Additional testimony of this witness disclosed that, as to the unrecorded, undeveloped lots, "we have a stream to contend with" and that "we have been trying to reach a solution with the authorities in an effort to negotiate some kind of arrangement whereby the problem could be licked or solved."

The witness was further questioned as to the accuracy of a statement made by him at a public hearing before the Montgomery County Council in June, 1955. He admitted the correctness of the following statement: "The corporation bought a parcel of surplus land from the government and recognizing the problem of drainage from the start, proposes to develop it into salable lots. They have put a plat on record, accepting the area, recognizing that it is a problem piece of land and requires some study and considerable expenditure of money to make it useful as residential property. We recognized the problem from the start and prior to submitting a plat for record to the remaining portion of it, we wrote to the Washington Suburban Sanitary Commission as a feeler as to what position that authority would take with regard to storm drainage * * *."

Another witness for the plaintiffs, Mr. Vernon D. George, a land surveyor, with ten or twelve years experience in storm drainage work, testified that the installation of the proposed drainage system would concentrate the water and discharge it on to the land, but so far as erosion is concerned "it would just be hazarding a guess as to what actually would happen." This witness further gave it as his opinion that, if the present plan is put into effect and there is an increased amount of water flowing over the appellants' land, "it is simply going to

make the problem more difficult to take care of than it is now."

Mr. Donald Lee Chamberlin, a registered professional engineer and land surveyor, who is president of both plaintiff corporations, testified that he had appeared before the Montgomery County Council and objected to the proposed plans, that he had no objection to the construction of Radnor Road but "to do this and dump the water on us is doing only half a job." He urged a revision of the plans and a complete job to carry the water to a point beyond which it would not damage them. He further testified that on one occasion the pipe under the driving range overflowed but there was no damage so far as erosion is concerned because it did not overflow to any great extent for any long period of time, but that debris in the form of sticks, weeds and leaves was deposited on the land. The witness further stated that this pipe would not constantly overflow but "only in the times of a ten-year storm", meaning a storm of hurricane force. He also stated: "No mortal man could say when or how often it would happen, but when you get water down there in excess of five cubic feet per second, that pipe will overflow."

Other witnesses for the plaintiffs testified that there would be an increase in the flow of water and more erosion than at present.

Mr. Donald McCathran, a registered land surveyor, and an employee in charge of the design section of the Highway Engineering Division of Montgomery County, testified on behalf of the defendants that he prepared the storm drainage plans in issue, that these plans were approved by the Washington Suburban Sanitary Commission, that the drainage system would provide for the draining of the proposed Radnor Road all within the watershed, and that it would not drain any area not now being within the natural drainage boundaries. He also testified that the installation of the proposed drainage system would increase the quantity of water to flow through the pipes and that there would be an increase in erosion, and that the water would flow into the stream on the appellants' property.

From this outline of the essential facts in the case it must be determined whether the consummation of the plans for the construction of the two new roads and the installation of the

drainage system would violate the rights of the plaintiffs, and entitle them to the injunctive relief sought in these proceedings.

Generally, a municipality is not liable to a property owner for the increased flow of surface water over or onto his property, arising wholly from the changes in the character of the surface produced by the opening of streets, building of houses, and the like, in the ordinary and regular course of the expansion of the municipality. *McQuillin, Municipal Corporations,* Vol. 18 (3d Ed.), § 53.141; *Womar v. City of Long Beach* (Cal. App.), 114 P. 2d 704. If, however, the municipality collects surface water into a single channel and casts it in a large and substantially increased volume on an adjacent owner so that the stream will be filled beyond its natural capacity and thereby causes the stream to overflow on his lands, the owner has a cause of action. *Foster v. Webster,* 44 N. Y. S. 2d 153.

This Court has recently stated the rule, which is well established in this State, in *Hancock v. Stull,* 206 Md. 117; *Baltimore County v. Hunter,* 207 Md. 171; *Battisto v. Perkins,* 210 Md. 542; that the owners of land are entitled to have surface water flow naturally over the land of the lower landowner, and the lower owner cannot obstruct the running of water from the higher land onto his own. *Whitman v. Forney,* 181 Md. 652. This rule is subject to certain pertinent qualifications, namely, that the upper owner has no right to discharge water into an artificial channel, or in a different manner than the usual and ordinary natural course of drainage, or put upon the lower landowner water which would not have flowed there if the natural drainage conditions had not been disturbed. If water is unlawfully forced on the lower owner, he is entitled to protect his property from the unwarranted flow. *Biberman v. Funkhouser,* 190 Md. 424; *Baltimore County v. Hunter, supra.*

It is agreed in this case that there will be an increase in the flow of water within the natural drainage area and that there may be some erosion of the appellants' property, and also deposits of some debris thereon. However, at this time there is no specific evidence to establish to what extent, if at all, the

appellants' property will be damaged, or in what manner their rights will be violated by the increased flow of water in its runoff from the natural drainage area. *Bundy v. City of Sullivan* (Ill. App.), 117 N. E. 2d 302.

The appellants' evidence consists largely of the opinions of engineers, based on experience, which are conclusions as to alleged future damage. While this type of testimony has considerable value, it leaves too much to be desired by way of accuracy and tends to border on speculation and surmise. *Gibson v. State,* 64 N. Y. S. 2d 632, 640. It assumes conditions which do not exist. Damage does not necessarily result from an increased flow of surface water.

The appellants admit that the proposed plans for installation of the drainage system are in accordance with accepted engineering standards, and that they approve these plans as to design. Their principal complaint is based on the fear of "dumping water" on their property in the future, and on the refusal of the appellees to revise the drainage system plans to include satisfactory drainage of their property in order to relieve the appellants of the existing drainage servitude.

Recent decisions of this Court make it clear that the appellees cannot, with impunity, artificially increase or concentrate the natural flow of surface water to cause damage to the lower owners, and it is incumbent upon the appellees to use reasonable precautions against such damage. *Battisto v. Perkins, supra,* and cases cited therein.

Appellants rely in part on the decision of this Court in the case of *Neubauer v. Overlea Realty Co.,* 142 Md. 87, to support their contention. In that case there was a pollution of a stream across the complainant's property, by the emptying therein of sewage from sinks and cesspools belonging to houses erected on a neighboring suburban development. Also, the collection of drainage and sewage, and the emptying of it on the complainants' land, cut a deep ditch therein, and at the time suit was brought the damage was continuing. The court granted injunctive relief, as prayed. However, no such facts are present in the instant case.

Complainants seek to have this Court enjoin the defendants from completing the proposed improvements until such time

as the defendants agree to construct the proposed drainage system in such a way as not to damage their (complainants') property. Just how long it will take for the parties to effect such an agreement, or how extensive and expensive such a revision of the plans will be, does not appear. The propriety, extent and character of public improvements which lie within the discretion of municipal authorities are not subject to judicial interference unless exercised arbitrarily, oppressively or fraudulently, and they result in invasion of property rights. *McQuillin, Municipal Corporations,* Vol. 13 (3d Ed.), § 37.255; *Cech v. City of Cedar Rapids* (Iowa), 126 N. W. 166.

The evidence in this case does not reveal any present invasion of property rights of the appellants.

We think that the case before us does not present a situation which would justify judicial interference with the completion of the proposed public improvements. This decision is without prejudice to the right of the appellants to seek redress in the future for any damages which they may suffer as a result of any illegal acts for which the appellees may be held responsible because of the completed improvements.

The appellees filed a motion to dismiss the appeal in this case. Argument on this motion was heard by the Court immediately preceding the argument of the case on its merits, and action on the motion was reserved.

In view of the fact that the allegations in support of the motion relate to matters which are not a part of the evidence before us in this case, and which are not conclusive as to the legal rights of the parties hereto, the motion to dismiss the appeal is hereby denied.

*Decree affirmed, with costs.*