SAINATO ET UX. *v.* POTTER ET UX.

[No. 189, September Term, 1959.]

*Decided April 13, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*W. Perry Doing* and *Joseph C. Turco,* for appellants.

*George T. Burroughs,* with whom were *Ginsberg & Ginsberg* and *Hyman Ginsberg* on the brief, for appellees.

PRESCOTT, J., delivered the opinion of the Court.

The defendants below appeal from a money decree entered against them by the Circuit Court for Prince George's County for damages caused by surface water, silt, debris and other foreign substances draining from their property onto the adjoining property owned by the appellees.

Lots 6, 7 and 8 in Block W in a subdivision known as Section 4, Forest Heights, face in an easterly direction on Sachen Drive. Lot 6 is the most southerly of the three lots and Lot 7 is contiguous thereto to the north, with Lot 8 adjoining Lot 7 to its north. The appellants are the owners of Lots 6 and 7, and the appellees own Lot 8.

The evidence discloses that in their original and natural state Lot 6 was slightly higher in elevation than Lot 7, and Lot 7 was slightly higher than Lot 8. A deep ravine ran in a northwesterly direction through a part of Lot 6 and proceeded diagonally across Lots 7 and 8 to the lots below. The surface water originally ran down across Lots 6, 7 and 8, the major portion of which was carried away in said ravine, and the remainder followed the general contour of the land, flowing to the rear and lower sides of these lots.

In the latter part of 1946 and the early part of 1947, the appellees erected a dwelling on Lot 8. In connection with the erection of their home they installed an 18″ drain pipe beginning at the boundary of Lots 7 and 8, extending diagonally through the ravine that existed to the opposite bound-

ary of Lot 8, for the purpose of carrying off the surface water which had previously flowed through the ravine. Following the installation of this pipe, they filled the ravine on their lot and placed fill dirt on the entire remainder of their lot, thereby raising the grade from two to seven feet above the original grade. At or about the same time the appellees also built a driveway on Lot 8, immediately contiguous to and paralleling Lot 7. Sometime thereafter they erected a "berm" or mound of earth along the lot line of Lot 7 and paralleling the driveway. The effect of this fill, grading and installation of the "berm" above referred to was to raise the grade of Lot 8 above Lot 7, and the natural flow of the surface water from Lot 7 through Lot 8 was changed, and surface water which had originally drained from Lot 7 through Lot 8 was thereby caused to collect on Lot 7 creating a swampy condition.

In May of 1947, the appellants purchased Lot 7. During the years 1951 to 1954, intermittently, the appellants placed fill on Lot 7. Shortly before building upon this property, the appellants had a bulldozer level off Lot 7; and, in so doing, the new earth was pushed out to, or very near, the boundary between Lots 7 and 8. After the bulldozing on Lot 7, mud, silt and debris were washed by the elements on to Lot 8, and they killed several trees and destroyed the appellees' vegetables. At the time of the hearing, Lot 7 was again slightly higher in elevation than Lot 8, and the surface water flowed from Lot 7 onto Lot 8. There still existed a depression in Lot 7 about midway back from the front, and not far from the boundary line of Lot 8, which was described as a catch basin type of depression for the accumulation of drainage water, as observed by the chancellor, and both Lots 7 and 8, as originally, sloped sharply toward the rear with the general grade following a general downward trend toward the street below.

Originally the bill of complaint had prayed for injunctive relief. At the time of the trial, the appellants had sold Lots 6 and 7 and the purchasers had intervened. The chancellor refused to issue an injunction and no appeal was taken on this point. He, however, found that the appellants' grading had the effect of materially changing the natural flow of sur-

face water, which caused silt, debris and other substances to be deposited on Lot 8, and awarded damages therefor.

The appellants first claim that the evidence does not support a finding that the grading of Lot 7 caused "an excess drainage and diversion of surface waters onto Lot 8"; and, even if the evidence did disclose that the appellants filled their property and this filling did change the natural flow of surface water, this change was "a reasonable use" of their property under the "reasonableness of use" rule relating to surface drainage.

This Court has consistently held that the civil law rule, and not the common-law rule, regarding surface waters applies in Maryland; that is, the owner of higher land is entitled to have surface water flow naturally onto the lower land of an adjoining landowner. *P. W. & B. R. R. Co. v. Davis,* 68 Md. 281, 11 A. 705; *Balto. & Sparrows Pt. R. Co. v. Hackett,* 87 Md. 224, 39 A. 510; *Eisenstein v. Mayor, etc., of Annapolis,* 177 Md. 222, 9 A. 2d 224; *Biberman v. Funkhouser,* 190 Md. 424, 58 A. 2d 668; *Bishop v. Richard,* 193 Md. 6, 65 A. 2d 334; *Battisto v. Perkins, et al.,* 210 Md. 542, 124 A. 2d 288. And the lower landowner cannot obstruct the running of natural surface waters onto his land from that of the higher owner. *Hancock v. Stull,* 206 Md. 117, 110 A. 2d 522, *County Comm'rs of Baltimore County v. Hunter,* 207 Md. 171; 113 A. 2d 910; *Battisto v. Perkins, supra; Kennedy-Chamberlin Development Co. v. Snure,* 212 Md. 369, 129 A. 2d 142. This rule is however, subject to the important limitation that the higher landowner cannot artificially collect surface water and discharge it at one point over the lower land, so as to injure it, nor can he precipitate it in greatly increased or unnatural quantities upon his neighbor below to the substantial injury of the latter. *Neubauer v. Overlea Realty Co.,* 142 Md. 87, 120 A. 69; *Biberman v. Funkhouser, supra; Battisto v. Perkins, supra; Kennedy-Chamberlin Development Co. v. Snure, supra.*

In cases where a strict application of the general rule would result in hardship upon either the higher or lower landowner, Courts have recognized what is termed a "reasonableness of use" rule. An application of this rule creates no precedent,

nor does it change the adopted rule of law. It is based upon the facts of a particular case, and provides mitigation for the harsh application of the general rule. This Court has recognized the rule on several occasions. *Whitman v. Forney,* 181 Md. 652, 13 A. 2d 630; *Bishop v. Richard, supra; Hancock v. Stull, supra.*

The appellants ask us to determine the case on this "reasonableness of use" doctrine, and we shall do so. It seems evident from the original topography of Lots 7 and 8 that it was not practical to build on either without substantial grading. The appellees graded Lot 8 first, and it was apparent to the appellants that Lot 7 would likewise require grading if it were to be built upon (in fact, the appellant, Mr. Sainato, helped to grade Lot 8). If we assume that the appellants had a right to raise the elevation of Lot 7, that they raised it to no more than a reasonable height above Lot 8, and that the surface water that would be discharged upon Lot 8, after Lot 7 became a permanently improved lot, would be a reasonable amount under all of the circumstances, the appellants are still liable to the appellees for damages. In *Battisto v. Perkins, supra,* 210 Md. at page 546, it was stated:

> "In the instant case it is true that the appellees had a right to improve their property and prepare it for the erection of houses, but it was entirely forseeable that the removal of all ground cover might increase the run-off and cause damage to the lower owners, and we think the upper owners were under a duty to use reasonable precautions against harm."

Cf. *Turner v. Washington Suburban Sanitary Comm.,* 221 Md. 494, 158 A. 2d 125. In the case at bar, fresh earth was bulldozed to the boundary of Lot 8 at an elevation which made it obvious that silt and debris would be carried by rainfall onto that lot. The appellants took no precautions to prevent this from happening. They, apparently, relied upon the theory that they had a right to raise the elevation of Lot 7, and that it was the appellees' responsibility to guard against any resulting damage. In this they were mistaken; it was

the appellants' duty, as stated in *Battisto,* to "use reasonable precautions against harm," from the dirt, silt and debris.

The instant case is not unlike that of *Biberman v. Funkhouser, supra,* where this Court held that the owner of a dominant estate was entitled to raise its elevation so as to restore the natural flow of surface water, after the owner of an adjoining servient lot had raised its elevation so as to divert the natural flow. In that case, however, there was no question of excess dirt, silt or debris involved. The ruling was that the servient lot had to receive the *surface water* from the dominant estate after its elevation.

In *City Dairy Co. v. Scott,* 129 Md. 548, 100 A. 295, the Court held that the owner of a lot of ground has the right to prevent the unlawful flow of water over it; and, if he do so by filling up his lot and by reason of the same his neighbor's land is flooded by the water, he is not responsible therefor. Again, there was no question of excess dirt, silt and debris involved as there was in *Battisto v. Perkins, supra,* and is in the case at bar. We do not hold in this case that the appellees are entitled to recover because the surface water again flows upon their property after the elevation of Lot 7, but we do hold that they are entitled to recover for the failure of the appellants to take reasonable precautions to prevent damage from the excess dirt, silt and debris.

The question as to the amount of the damages gives us more difficulty. The only testimony upon the subject was given by Mr. Potter, one of the owners. He was asked this question: "Mr. Potter * * * what do you say at this time is the damage to your property as a result of the water drainage upon your property, the silt, the killing of your trees and grass, and the water going into your basement?" To which he replied: "It is considered that it has depreciated the value of my property between $2,500.00 and $3,000.00, your Honor." The chancellor simply stated in the decree, "* * * judgment for damages in the amount of $1,000.00 will be awarded the complainants * * *." He made no mention as to how he arrived at the figure. He did not state whether it was the sum necessary to restore the appellees' property to its former condition before injury, or whether it represented the differ-

ence between the value of the property before and after the injury.

The general rule in Maryland for the measure of damages for injuries to real property is that where the damaged property can be restored to the condition it was in prior to the injury, without cost disproportionate to the actual injury, the cost of such restoration is the measure of damages; but where that is impracticable, then the difference between the value of the property before and after the injury is the correct measure. *Superior Construction Co. v. Elmo,* 204 Md. 1, 10, 102 A. 2d 739, 104 A. 2d 581, and cases there cited.

From what has been said above, it is evident that there was no evidence as to the cost of restoration or repair of the appellees' property, and there is no evidence as to the value thereof before and after the injuries. There was some evidence of a most unsatisfactory nature of an alleged depreciation in the value of the property. Just what Mr. Potter meant when he answered, "It is considered that it [the injury] had depreciated the value of my property between $2,500.00 and $3,000.00" is not exactly clear. He fails to make it plain whether this was his opinion, or that of others. If it were his own, he failed to state any facts upon which it was based; and, if it were the opinion of others, it was clearly hearsay. It also clearly includes as an element of damages the fact that *surface waters* now flow upon Lot 8—an element for which, we think, the appellees are not entitled to recover. In any event, we think the chancellor should have determined the basis of the measure of damages in accordance with the cases we have cited above, and, after having determined the same, he should have required the plaintiffs to adduce sufficient evidence to have permitted him to apply the correct measure of damages under the facts of the case before him. If all this were done, it would naturally follow that it would be proper for him to state in his opinion the measure applied and his reasons therefor.

We will, therefore, affirm the decree on the question of liability of the appellants for damages, reverse the same with reference to the amount of damages awarded, and remand the

case for the purpose of taking additional testimony on the question of the amount of damages, alone.

> *Decree affirmed in part and reversed in part, and case remanded for further proceedings, the appellants and the appellees each to pay one-half the costs.*